## Klatt vs. The City of Milwaukee.

*October 4 — October 18, 1881.*

Cities: Highways. *Liability of city for safe condition of street undergoing repairs. Notice of removal of barrier.*

1. In case of injuries suffered in attempting to pass over streets while they are undergoing repair or improvement, a city is liable only for a want of ordinary care; and where a street, during the process of repair, has been made safe, so far as the public is concerned, by barriers or other proper precautions, but afterwards, suddenly and without warning to or fault of the city, becomes unsafe by the removal of such barriers or other precautions, the city is not liable for damage occasioned thereby, without actual or implied or presumptive notice to it of such removal, and the lapse of a reasonable time for guarding against the consequent danger.

2. Under a charter requiring a city to insert in contracts for street improvements a stipulation that the contractor "shall put up and maintain such barriers and lights as will effectually prevent the happening of any accident," where a sufficient barrier has in fact been put up across the dangerous street, but removed by some unknown person before the accident, the liability of the city is still limited as defined in the foregoing proposition.

3. Where the special findings show that the accident happened in the night, five hours after the barriers were erected, and that in the interval such barriers had been removed, but do not show when or by whom the removal was made, nor any other facts bearing upon the question of implied or presumptive notice, it cannot be held as matter of law that there was such notice.

APPEAL from the County Court of *Milwaukee* County.

Action to recover damages for injuries to plaintiff's person, suffered on the night of the 6th of October, 1878, and caused by his being thrown from a vehicle, while driving a horse attached thereto, along a street of the defendant city. The ground of liability alleged is, that the city, while engaged in paving said street with wooden blocks, was negligent in causing large quantities of said blocks to be deposited and left in heaps upon the surface of the street, and also in omitting to place barriers and warning lights at that part of the street, as required by law. The answer alleged, among other things, that on the evening of the 5th of October, 1878, being Saturday evening, the contractor who was paving said street for the city, caused good and sufficient barriers to be put up to prevent all persons from driving over that portion of the street where plaintiff was injured, so that no person could drive upon the roadway without taking away said barriers or a portion thereof; that said barriers remained in place all that night, and until evening the day following; and that on the evening of Sunday, the 6th of October, one Metzel wrongfully tore down and removed said barriers, and left them down, without the knowledge or consent of the contractor or any one acting under or for him, or of any officer or agent of the defendant city; and that neither the defendant, nor any of its officers or agents, nor said contractor or any one acting for or under him, had notice of said wrongful removal, nor were they or either of them chargeable in law with notice thereof, until after the time when said injuries are charged in the complaint to have been suffered.

The jury found the following facts by special verdict: that the accident occurred at the time and place mentioned in the complaint; that at the point where the accident occurred the street was at the time undergoing necessary repairs under a contract with the city, and was for that reason unsafe and unfit for the ordinary use of a street; that when the accident

occurred plaintiff was driving from the east toward the west; that a barrier, consisting of boards laid on boxes or barrels, and extending across the street, had been put up and left up when work ceased on Saturday night, east of the point where the accident occurred; that the barrier was there on Sunday afternoon as late as about four o'clock, but was removed before the accident; that it was not removed by the contractor or by any one in his employ, nor did he, or the defendant or any of its officers, know or have notice of its removal before the accident; that the plaintiff was not guilty of contributory negligence; and that in case plaintiff should recover, the damages to which he would be entitled were $240 for expenses necessarily incurred by reason of the accident, $312 for loss of time, and $2,000 for pain and suffering. Upon such special verdict the court rendered judgment in plaintiff's favor for $2,552 damages; from which the defendant appealed.

*J. R. Brigham*, City Attorney, for the appellant, argued, among other things, as follows: The jury found that there was a barrier of boxes and barrels, with boards laid upon them, extending completely across the street. That was a sufficient notice to travelers. "No person in the exercise of ordinary care, on coming upon such an obstruction, would attempt to go forward in the dark." *Cornelius v. Appleton*, 22 Wis., 637. The evidence shows that there was also a gas light at the corner near which the accident is alleged to have happened. The city was not required to provide anything further. So long as the barrier was there, the city could not be chargeable with negligence. *Hubbard v. Concord*, 35 N. H., 70. It seems to be very well settled that in cases of accidents from obstructions or defects in a properly constructed highway, caused by the recent sudden action of natural causes, the town or city is not liable, unless it had notice, actual or presumed, of the obstruction or defect, and reasonable opportunity to remove the former or repair the latter. *Ward v. Jefferson*, 24 Wis., 342; *Goodnough v. Oshkosh*, id., 549;

*Cuthbert v. Appleton,* 22 id., 642; *Dewey v. Detroit,* 15 Mich., 307; *Chicago v. McCarthy,* 75 Ill., 602; *Hubbard v. Concord,* 35 N. H., 52, 72. The same principle seems to be applied to cases where the sudden obstruction or defect is wrongfully caused by human agency, but without fault or neglect of the town or city. *Cook v. Milwaukee,* 24 Wis., 275; *Palmer v. Portsmouth,* 43 N. H., 266. The length of time that elapsed between the removal of the barrier and the happening of the accident, was not great enough to raise a presumption that the city authorities had notice of such removal. *Cuthbert v. Appleton,* 22 Wis., 644. And there was no proof of actual notice. Upon the facts found, and in the absence of any proof or presumption of notice, judgment should have been rendered for the defendant.

*J. V. V. Platto,* for the respondent, argued, among other things, that even if the barriers were torn down and removed by some person without the knowledge or consent of the defendant or its contractor, the defendant was not excused. Sec. 11, ch. V of its charter (ch. 184, Laws of 1874), requires the city, in letting any contract for the improvement of streets, to insert therein substantial covenants requiring the contractor, during the night time, " to put up and maintain such barriers *and* lights as will *effectually prevent* the happening of any accident; " and sec. 28, ch. XXI of the general ordinances of the city of Milwaukee, provides that it shall be the duty of every person who has a contract for improving any street in said city, to see that such street " shall be passable and not otherwise be made dangerous," and also to see that " from sundown to sunrise on the next morning, during each and every day during which such work shall be in progress, and on which such street shall be impassable or dangerous for passers by, good and efficient barriers or lights are erected and kept," etc. By the charter provision cited, defendant was charged with the duty of maintaining such barriers and lights as would effectually prevent accident. *Congreve v. Morgan,*

18 N. Y., 84; *Dygert v. Schenck*, 23 Wend., 446–8; *Seward v. Town of Milford*, 21 Wis., 485, 490; *Hammond v. Town of Mukwa*, 40 id., 35, 42; *Kœster v. City of Ottumwa*, 34 Iowa, 41, 43. It was not essential to defendant's liability that it should receive notice of the removal of the barriers. It was all the time on notice. The street was rendered impassable by defendant's own act. The persons employed in paving the street were under defendant's superintendence and control, and the provisions of charter and ordinance above cited put defendant on its vigilance and diligence to effectually prevent accidents like that complained of. "It is the duty of a city to supervise work done, and to use or see used suitable precautions to prevent accident. The rule that a city must have notice, actual or implied, of a defect in a public way, before it can be held liable for an injury caused by the defect, has no application to a case where the ignorance of the defect is the result of a clear and unmistakable omission. Ignorance in such a case is itself negligence." In this case the absence of the required light and barrier was the result of omission of duty. And the ignorance of the defendant was itself negligence. 2 Addison on Torts, 1311–12, 1317–18; *Boucher v. New Haven*, 40 Conn., 456, 460; *City of Ft. Wayne v. De Witt*, 47 Ind., 391; *Hart v. Brooklyn*, 36 Barb., 226, 229; *City of Springfield v. La Claire*, 49 Ill., 477–80.

ORTON, J. The accident which caused the injury complained of is alleged to have happened by reason of the city not keeping barriers and lights in the street where it occurred (which was then being paved and thereby rendered unsafe for travel), which would have prevented it. The duty of the city to protect the traveling public from injury liable to happen in consequence of street improvements of this character is the vital principle of this case; and, before applying it to the facts and findings, it is necessary to determine the nature of this duty of the city, and the extent and measure of the responsi-

bility involved. When this duty is not directly and specific-
ally imposed by law, it arises by necessary implication from
the primary duty, which is so imposed upon the city, to keep
its streets, which have been opened to public use, all the time
fit and safe for such use. The right and duty to make im-
provements of streets by grading, paving, etc., in order to make
and keep them in such fit and safe condition, do not constitute
an exception to such primary duty, but are necessary to its
best performance, and arise from it and are consistent with it
and subsidiary to it, although for the time being and while
such improvement is being made such streets are rendered less
or wholly unfit or unsafe for such public use. The duty in
question, to protect the public by suitable precautions against
danger and damage while so improving the streets, arises from
and is connected with the right and duty to improve, and both
are included in the first or primary duty imposed by law to
keep the streets in repair and all the time in a condition safe
to the traveling public, as well during the progress of im-
provements as at all other times. This must be so, else there
is no liability for neglect of the duty in question, at least in
this state, where the liability and right of action exist by stat-
ute, or not at all. The duty to repair and to keep in repair is
coupled with the duty to protect the public against accidents
while the streets are out of repair or while they are being re-
paired, and they must be kept in a safe condition, or the pub-
lic must be protected from accident, in some proper way, while
they are unsafe. This view is sanctioned by many cases in
this court and elsewhere.

In the leading case of *City of Milwaukee v. Davis*, 6 Wis.,
377, it is said: "The leaving of the street in that impassable
condition on the night in question, without lights, fence or
guard, or other token, . . . is in fact the *gravamen* of the
complaint.

In *Seward v. Town of Milford*, 21 Wis., 485, an instruc-
tion was approved, "that if the town had not had time to

repair the road, it should have put up and kept up proper guards at that place to notify and prevent travelers from going on the dangerous track."

In *Ward v. Town of Jefferson*, 24 Wis., 342, the two duties are coupled together, in the language: "And to have put the road in repair, or by other means to have guarded against and prevented the injury."

In *Hammond v. Town of Mukwa*, 40 Wis., 35, the present chief justice said: "And we are clear that the town is primarily liable when it fails to keep such highway safe for public travel, or does not use proper precautions to warn travelers of the dangerous condition of the highway."

It is said in Shearman & Redfield on Negligence, § 399, citing several authorities: "Pending the work of rebuilding, if the public is put upon its guard, the town will be excused for the defective condition of the highway."

These references are quite sufficient to show by authority, what is apparent in reason, that in the very nature of the duty to keep highways in repair and safe for travel is included the duty to use proper precautions against accident while they are unsafe and out of repair, and that the two duties, if they may be nominally separated, are of the same nature and obligation, and liability for their non-performance rests upon the same degree of negligence. It follows, therefore, that if the city could not be held to a *strict* and *absolute*, but only to a reasonable, performance of the duty to keep its streets in repair and safe for travel, and in respect thereto only to the exercise of ordinary care and prudence, and would not be held liable for an injury occasioned by their being out of repair and unsafe, without actual or presumptive notice that they are in such condition, it should be held to no stricter performance of the duty to protect the public by suitable precautions from injury while the streets are out of repair and unsafe for travel, and in respect thereto should be held to the exercise of the same degree of care and prudence. It is too well established to re-

quire the citation of authorities, that if a street should, suddenly and without warning to or fault of the city, come by any means into a condition dangerous to travel, the city would not be liable for damages occasioned thereby, without actual notice, or notice implied or presumed by lapse of time, of its condition, and until after a reasonable time for repairing it. By the same rule, when a street being improved is made safe, so far as the public is concerned, by barriers or other proper precautions, if, suddenly and without warning to or fault of the city, it becomes unsafe by the removal of such barriers or other precautions, by any means, the city should have the same notice.

In Shearman & Redfield, § 376, it is said: " During the progress of the work of altering or repairing a highway, *ordinary* care must be used to prevent injuries to passengers therefrom." In *Kœster v. City of Ottumwa*, 34 Iowa, 41, an excavation in the sidewalk, into which the plaintiff fell, had been made and guarded in a certain manner by a builder; and on the trial a witness was asked, substantially, whether this excavation was not guarded in the *customary* manner among builders. This evidence was held improper, and the supreme court, in affirming the ruling, say: " The point in issue was as to whether the defendant had been negligent in fact. If the custom in that city had been to do *more* in the way of barricading than *ordinary* care and prudence required, the defendants, nevertheless, would not have been liable if it had done only what *ordinary* care and prudence required. It must exercise ordinary care. Custom will not require it to do more, nor excuse it for doing less."

We think that we have sufficiently shown that the liability of the city for not properly guarding a street made dangerous to travelers by works of improvement, so as to prevent accidents thereon, as an implied liability arising from its liability imposed by the statute for not keeping it in a condition of repair and safety, is not an *absolute* liability, but depending

upon the want of ordinary care and prudence. But in this case it is claimed by the learned counsel of the respondent, that the charter (section 11, sub-ch. V of ch. 184, Laws of 1874), requiring the city to have inserted in contracts for street improvements a stipulation, in substance, that the contractor "shall put up and maintain such barriers and lights as will effectually prevent the happening of any accident," imposes upon the city the absolute duty of having such barriers and lights put up and maintained, which must be strictly performed. Whether this is so or not it is unnecessary in this case to decide; for one of the findings of the jury is, that a barrier of a certain kind had been put up across the dangerous street on Saturday night before the accident occurred, and there is no finding that it was insufficient to have prevented the accident if it had remained until the time of its occurrence. When this duty has been performed and a sufficient barrier has been put up, as required by law, the absolute liability, if there is any in such a case, ceases, and the city is only bound to use common care and diligence in maintaining it. If such sufficient barrier is afterwards removed or thrown down by a stranger, or from any cause, without the knowledge or fault of the city authorities, and they have no actual notice that it is so removed or thrown down, and a sufficient time has not elapsed, under the circumstances, to raise a presumption that they had notice thereof before the accident, the city is not liable.

In *Seward v. Town of Milford, supra*, the following instruction to the jury was approved by this court: "If the town put up proper guards to notify and keep travelers from going on the dangerous track, and kept them up until the night of the accident, and such guards were removed by some person in the dark, it is not liable." The case of *Doherty v. Inhabitants of Waltham*, 4 Gray, 596, is closely analogous to this case in its facts relating to the putting up and the removal of the barriers. The workmen, before they left the work at

Klatt vs. The City of Milwaukee.

sundown, put up barriers around the well which they were digging in the street. Between 9 and 10 o'clock the same night the obstruction had been removed, either by accident or design, but at what time there was no evidence, and the plaintiff fell into the well and was injured. The jury were instructed that the town would not be liable "unless it had reasonable notice of the removal of the barriers, and that the road had by such removal become again dangerous," and this instruction was approved. In *Aylesworth v. C., R. I. & P. R. R. Co.*, 30 Iowa, 459, the court said: "It is the duty of railroad companies, under our statute, to fence their roads. It is also their duty to *maintain* and *keep up* the fences after they are made. But before the liability would attach in the latter case, in the absence of wrong on their part, they must have knowledge that the fence is out of repair and a reasonable time thereafter to put it in repair." In *Daniels v. Potter*, 4 Car. & P., 262, it is held that a tradesman who has a cellar opening upon the public street, is bound, when he uses it, to take reasonable care that the flap of it is so placed and secured as that, under ordinary circumstances, it shall not fall down; but if the tradesman has so placed and secured it, and a wrong-doer throws it over, the tradesman will not be liable in damages for any injury occasioned by it. Authorities to the same effect might be multiplied indefinitely, but a principle so clearly founded in reason needs no further support.

It appears by the evidence that this accident occurred about 9 or 10 o'clock in the evening, and the jury found that the barrier was up at 4 o'clock that afternoon, and they found further that it was not removed by the contractor or any one in his employ, and there was no finding or proof when the barrier was removed or by whom. The jury found that neither the contractor nor the city, nor any of its officers, had notice before the accident that the barrier had been removed. If we were to construe this finding that the city had no actual or implied or presumptive notice of the removal, then by the above principle and authorities the plaintiff was not entitled

to recover.   But we do not feel at liberty so to construe it, for the jury probably meant *actual* notice, as the matter of implied notice from lapse of time or from circumstances was not alluded to in the charge of the court as a principle that had any application to the case, and there was no finding on the question.   The learned counsel of the respondent now insists that this court should hold that from the mere lapse of time, of about five hours, from 4 o'clock to the time of the accident, the city, through its officers or agents, is presumed, as a question of law, to have had notice.   This might be a question of law for the court, if the jury had found all of the facts and circumstances from which a clear legal conclusion could be drawn, of notice or want of notice.   But here there is an entire absence of facts pertinent to such an inquiry.   We do not even know when the barrier was removed, and we know nothing of the relative situation of the street or the part of the street in which the barrier had been placed; whether near to or distant from the centers of trade or business; whether much or little used for travel; how near to it were the residences or places of business of the officers or agents of the city, or how near to it they were likely to pass in going from place to place; or any other material fact to be considered in forming such a legal conclusion.   This presumption of notice must have some foundation of fact, and the facts must be such as to clearly raise the presumption, or neither the court nor jury would be justified in assuming that the city had such notice.   The special findings of the jury in these respects are defective, and they are also defective in not finding that the barriers that were put up were reasonably sufficient to prevent such an accident.   For these reasons the judgment must be reversed and a new trial had.

This opinion has been extended perhaps to a needless length, but the main question is an important one, and likely to arise in many kindred cases.

*By the Court.*— The judgment of the county court is reversed, and a new trial ordered.