# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF RICHMOND v. HARRY L. POORE.

### March 11, 1909.

1. VERDICTS—*Conflicting Evidence.*—The evidence in the case at bar is seriously in conflict as to whether an excavation in one of the streets of the city of Richmond into which the plaintiff fell and was injured, was properly lighted and barricaded at the time of the injury complained of, so as to warn the plaintiff of danger. The determination of this question was peculiarly the province of the jury, and their verdict should not be set aside.

2. INSTRUCTIONS—*Evidence to Support—Necessary Inferences—Case at Bar.*—Where, in an action against a city to recover damages resulting from falling into a hole in the street, the evidence for the plaintiff tended to show that the hole into which he fell was left unguarded and unlighted, while the evidence for the defendant tended to show that it had been left guarded and lighted only three-quarters of an hour before the accident, it was for the jury to reconcile the evidence, if possible, and an instruction to the effect that the city was not liable if the lights were extinguished and removed without its knowledge or consent between the time they were placed and the time of the accident cannot be said to be without evidence to support it. The jury were forced to this inference, although there was no direct testimony to that effect, or else believed that a number of witnesses were guilty of deliberate perjury.

3. NEW TRIAL—*After Discovered Evidence—Cumulative and Corroborative.*—The verdict of the jury will not be set aside on the ground of after discovered evidence, where such evidence is merely cumulative and corroborative of what was proved on the trial, or is immaterial.

Error to a judgment of the Circuit Court of the city of Rich-

mond in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Henry R. Pollard* and *Geo. Wayne Anderson,* for the plaintiff in error.

*David Meade White,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The gravamen of the declaration filed in this case by the father and next friend of Harry L. Poore, an infant between twelve and thirteen years of age, is that, by reason of the negligence of the city of Richmond in failing "to use due and proper care and caution to place and erect sufficient barriers around or on the sides" of "the deep and narrow ditch or excavation which had been dug across the sidewalk on the north side of Grace street, between Seventh and Eighth streets, for the purpose of placing a sewer therein," and "to place a sufficient number of lights at night near the said ditch or excavation, so as to give warning to persons of the ditch or excavation, and to prevent persons, and the plaintiff in particular, falling into the deep and narrow ditch dug as aforesaid at the place aforesaid," the plaintiff at or about 6:15 o'clock P. M. on the evening of the 20th day of December, 1906, in the exercise of ordinary care and caution, fell into said ditch or excavation and sustained the injuries for which damages in this action are demanded. The action was against the city of Richmond and the Murphy's Hotel, Inc., because the sewer connection which the city was intending to make was between the property of the hotel company and the sewer of the city, long before laid and in use on the north line of Grace street; but the issue was made up and tried as between the plaintiff and the defendant city.

The defendant city pleaded the general issue of "not guilty," and relied upon its ground of defense that it had properly guarded and lighted the ditch or excavation across the sidewalk, which it had a right to dig in the exercise of governmental power.

On the first trial of the issue thus presented, a verdict was rendered in favor of the defendants, and the court promptly overruled a motion to set aside the verdict and entered judgment thereon; but at a later day in the term the plaintiff moved the court to set aside the judgment entered as aforesaid, and to sustain the motion presented a petition setting forth the grounds upon which the motion was based, viz., misdirection of the jury, and after-discovered evidence. Ten days later in the term the court granted the motion to set aside said judgment, and granted leave to the plaintiff to renew his motion to set aside the verdict of the jury, which motion was made and granted five months after the trial and judgment therein, and a new trial awarded.

At the second trial there was a verdict and judgment for the plaintiff against the defendant city for damages to the amount of $3,000, and to that judgment this writ of error was awarded.

The first, and, in our view of the case, the only question for our consideration is the propriety of the court's action in setting aside the judgment and verdict rendered at the first trial.

It appears that on the day mentioned the plaintiff, who was a messenger boy, was sent by his employer to deliver some shoes that had been repaired; that he left the store, which was situated on Main street between Seventh and Eighth streets, about midway of the block, about six o'clock in the evening with the package, which was to be delivered to a party on North Eighth street; that instead of going up Eighth street he went up Seventh from Main to Grace street, two blocks, and then crossed over to the north side of Grace and walked east on Grace street towards Eighth street; that on that day and for two or three days preceding the city had been making a sewer con-

nection for the Grace-street annex of Murphy's Hotel, Inc., which was still in course of construction; that the sidewalk on the north side of Grace street and on the west side of Eighth street, in front and on the side of the hotel annex, were protected by a covering; that in order to make this sewer connection it was necessary to dig a trench across the sidewalk and into the street; that this work was done by the employees of the city, under the supervision of an experienced foreman and of the assistant city engineer, a civil engineer of long experience and of well recognized ability; that, according to the uncontradicted evidence, there was a large pile of dirt in Grace street, which had been thrown out of the trench and banked in the street south of the trench, and that on this pile of dirt there was a bright white light, and a red lantern on the curb, or on a plank above the ditch. The plaintiff, however, testified that there were no obstructions to prevent persons from walking into the ditch; that he did not get over or crawl under or run into any planks, and on cross-examination declared that he did not see any lights. "There wasn't any there."

He, besides the testimony of physicians as to his injuries, introduced four witnesses, one of whom, Joe Adams (colored), testified that there were two lanterns at the place of the accident; that on the east side he found one light on the board, which rested on barrels, he thought, one being next to the hotel and the other next to the curb stone; that there was a "very bright light" on barrels "out in the street, down in the gutter like," and that there was a barricade on the east side. Another of these witnesses, Caldwell, could only say, "I don't recollect seeing any lights where the hole was"; but then said there was a bank of sand or dirt out in the street, and a light on the bank of sand. The third witness, John H. Tabb, about the first person to get to the trench after the plaintiff had fallen into it, testified that there were two lights there, and that he "crawled under a plank to get to the trench, and he found there a board

about three feet high," which he found nailed or tied. "I came in contact with the plank, nailed or tied."

There is a sharp conflict in the statement of this witness and that of Adams (colored), the latter testifying in substance, that the only barricade he saw consisted of a board resting on barrels, one being next to the hotel and the other next to the curb stone; while the foreman (Tabb), denying that there was any light (as testified to by Adams) on the barricade which guarded the trench on the east and south side, says that the barricading plank on the east side (the side on which he approached the trench) was so securely fastened to the stanchions at each end (one of which was next to the hotel and the other next to the curb stone) that it bore his weight when he attempted to let himself down into the trench, and that he found it necessary to get under it, and did go under it, in order to enter the trench, the board being about two and one-half feet from the top of the trench. This witness, on cross-examination, stated emphatically that there was a like barricade on the west side of the trench, and that one coming down from the west side, as plaintiff stated he was going, would come in contact with the barricade before reaching the trench, and that in order to get into the trench it would be necessary for a person to get under the barricade; but on re-examination the witness modified his first statement to the extent that he could not say positively that he saw anything on the west side; and on cross-examination said about his first statement, "I made a mistake," meaning doubtless that he could not say positively as to whether there was a barricade on the west side of the trench or not, for the reason that when his whole statement is read he had no occasion or opportunity to ascertain definitely as to what were the obstructions to the approach to the trench from the west, as he approached it from the east and directed his efforts to extricating the plaintiff from that side.

The remaining witness, other than the physician, Joseph Dabney, did not get to the scene until the plaintiff had been

gotten out of the trench, and although he came up from the east side, unlike other of plaintiff's witnesses who were first to get there, he noticed no obstructions and went "right up to the hole and looked down"; didn't notice any "barrels or planks on the west side and didn't see any lights at all the time I got there," though he had just testified to "a light over the Eighth street side of the hole," and quite naturally the witness does not undertake to say what were the conditions at the place of the accident when it occurred, nor what changes had taken place after the plaintiff had been first found by Tabb and another in the bottom of the trench unable to exricate himself.

On the other hand, the evidence for the defendant city tended to prove that there was an electric light at the corner of Eighth and Grace streets; that permanent barricades were erected directly the work was started on both the east and west sides of the trench opened; that they were in place all the time and never taken down until the work was finished; that they were between four and five feet high, and consisted, on each side of the trench, of upright posts, one at the curbing and one at the building line; that on the east side two boards were nailed, and one placed diagonally, one end on the ground and the other up; that on the west side there were three boards nailed, and one across the center with a lantern tied on it, and that the western barricade was at least five feet from the ditch, and the eastern one at least three feet from it. It further tended to prove that the opening—the trench—on the south side had been protected by the bank of dirt, "twenty-five or thirty loads, away up high, and then a board nailed across on top of that."

The foregoing facts on behalf of the city are testified to by the foreman, and the seven members of the gang engaged in the work of laying the sewer connection between the hotel property and Grace street, from its beginning up to the time of the accident to the plaintiff, and until the completion of the work, each of them testifying that they quit work about half-past five on the evening of the accident, and left the trench

barricaded in the manner described, *i. e.,* with these permanent barricades lighted with a red and a white light, and that they found substantially the same barricades, lights, etc., in place next morning.

These witnesses were corroborated by the assistant city engineer, Bolton, who says that next morning, before the men went to work, he visited the place, and found exactly the barricades and lights the men say they left there the night before. Another witness, J. T. Disney, an official of the hotel company, testified that he went to the trench after the accident and saw a barricade "across the sidewalk and a lighted lamp on top of the boards across it"—*i. e.,* he saw barricades at both the eastern and western sides, and describes them, as did the other witnesses for the defense, when he states that he saw "also this barricade and lamp about 6 o'clock"; "I saw it between half-past five and six o'clock. I saw the men fixing it up." John Murphy, Jr., another official of the hotel company (the injured plaintiff having been carried into Murphy's hotel after the accident), says, on cross-examination: "I went down to investigate and found planks on both sides (of the trench), and on this side there was a light, two planks cris-crossed on either side"; and that upon his return to the hotel the witness asked the plaintiff how he came to fall in the trench, and that plaintiff replied: "I was coming down the street, and a plank was in my way, and I dodged under it and fell into the hole."

The evidence is clear that the men quit work at the trench about 5:30 P. M., and that the accident occurred about 6:15 P. M.

Upon the evidence related having gone to the jury, the court gave the following instruction, which it is claimed was a misdirection as to the law applicable to the facts which the evidence tended to prove, to-wit:

"A municipal corporation is not an insurer against accidents upon its streets and sidewalks, nor is every defect therein, though it may cause injury, actionable. It is sufficient if the

streets are in a reasonably safe condition for travel in the ordi-
nary modes, by night as well as by day; and if the surface of
a street or sidewalk is not in a reasonably safe condition, and
the city has caused such defect by the doing of necessary work
therein, it becomes the duty of the city to place suitable bar-
riers to guard against an accident by persons falling into such
excavation, and in a reasonable way to display lights to warn
persons using the streets of such defect; and if the jury believe
from the evidence in this case that on the evening of the acci-
dent, and before it happened, the city of Richmond closed and
guarded the defect in the street made by it by reasonably suit-
able barriers, and placed a reasonable number of lighted lamps,
and that the same were suitably located in order to prevent the
happening of the accident, the city of Richmond cannot be held
responsible for the injury to the plaintiff, even though the
lamps were afterwards extinguished, and had been removed
from their positions at the time when the accident happened,
unless it appears from the evidence that the city of Richmond,
through its officers and agents, knew, or ought to have known
by the exercise of ordinary care, of such removal and extin-
guishment in time to replace or relight the said lamps before
the accident happened."

It is not claimed that the instruction does not correctly state
the law, but the effort is made to apply the well settled prin-
ciple, that "it is error to give an instruction where there is no
evidence tending to support it," to the words of the instruc-
tion, "even though the lamps were afterwards extinguished,
and had been removed from their positions at the time when
the accident happened, unless it appears from the evidence that
the city of Richmond, through its officers and agents, knew, or
ought to have known by the exercise of ordinary care, of such
removal and extinguishment in time to replace or relight the
said lamps before the accident happened."

It would, as it seems to us, be a quite strained view of the
evidence for one to assert that it did not tend to prove the facts

adverted to in that part of the instruction alone objected to, and that it would clearly be a reflection upon the intelligence of the jury to say that they could have construed the language of the instruction as an expression from the court as to what the facts of the case were, instead of leaving the jury to determine from the evidence what facts it proved. Enough has been stated as to the evidence to show that it "tended to prove"—i. e., that it was persuasive of—two things: First, that the barricades and lights were actually about the trench on the evening of the accident about half-past five o'clock; and, second, that when the accident occurred, about 6:15 o'clock, there were no barriers there and no lights burning where they had been placed. If forced to believe plaintiff's witnesses that there were no barricades, lights, etc., about the trench, the instruction still left the jury, as should have been done, free to say whether or not the barricades, etc., were there when the work stopped at 5:30 P. M., and were removed without authority or knowledge of the city between that time and the time of the, happening of the accident, three-fourths of an hour later. The jury should have been, and were, left by the instruction complained of, free to reconcile the evidence, if it was possible to do so, and in this case the jury were by the evidence forced to the inference that the lights had been extinguished and removed, or to believe that either the two or three witnesses for the plaintiff, who swore positively that there were no lights or barricades there, on the one hand, or, on the other, that the ten witnesses for the defendant, who swore there were permanent barriers there from the beginning of the work. with lights at stated points every night and on the night of this accident, were deliberately guilty of perjury.

Counsel for the plaintiff says in his brief that while the evidence for the plaintiff, at the first trial, showed negligence on the part of the defendant city, the only conclusion from the evidence of the defendant, on the other hand, that could be drawn is that the trench was properly guarded and lighted at the time

of the accident. "Indeed (as counsel further says), there can be no middle ground. The trench was not barricaded and lighted, or it was barricaded at the time of the accident. The mind can reach no other conclusion, nor can it draw any other inference. The evidence cannot be reconciled, nor can it bear out any other theory." In this view of the evidence we fully concur, and further concede that the question was one of fact for the jury; but we are unable to agree that in the light of the evidence the jury at the first trial could have, even by possibility, been misled by instructior No. 5, *supra*, complained of. They may have accepted as true the version of the plaintiffs that the trench was not barricaded and lighted at the time of the accident, and also the version of the defendant that it was left three-fourths of an hour before properly barricaded and lighted; yet it was the province of the jury, in the exercise of which they were left free by the court's instruction, to infer that the lights had been removed without the knowledge of the city. or its officers and agents. This is but a fact which the jury might have inferred, and doubtless did infer, from the facts considered proved. Greenleaf on Ev., secs. 44, 48; 16 Cyc. p. 1050; 17 Ibid. 820; *Myers* v. *City of Kansas,* 108 Mo. 480, 18 S. W. 914; *Klatt* v. *City of Milwaukee,* 53 Wis. 196, 10 N. W. 162, 40 Am. Rep. 759; *Mullen* v. *Town of Rutland.* 55 Vt. 77; *Weirs* v. *Jones County,* 80 Iowa 351, 45 N. W. 8843; *Theissen* v. *City of Belle Plains,* 81 Iowa 120, 46 N. W. 854.

The after-discovered evidence relied on as justifying the setting aside of the verdict of the jury for the defendants at the first trial is set forth in the affidavit of one Nathaniel Moody (colored), and when analyzed the affidavit is found to consist of four parts. The first states that affiant saw plaintiff coming down Grace street toward Eighth and not seeing him "come out at Eighth," and of finding the plaintiff in the trench, etc. This is merely cumulative of the plaintiff's own story, which is uncontradicted in these particulars. The second part of the affi-

davit tells of affiant going over to the place and being "positive that there were no barriers on the west side of the excavation," and gives as his opinion that there were "no lights sufficient to warn a person of danger." Similar expressions of opinion of the witness, Tabb, had been ruled out by the court at the trial, and even if such opinions could be accepted as proper evidence, that of the affiant Moody was merely cumulative and corroborative of the statements made by the plaintiff himself and by his witness Adams, and therefore has to yield to the established test, fully recognized by plaintiff's counsel in his brief, of cumulative and corroborative evidence. The third part of the affidavit only tells of the affiant, Moody, seeing "a man fixing the place up" a short time after the accident, and that "after the accident the place was barricaded and lighted," all of which was but cumulative and corroborative of what the plaintiff and his witnesses, Adams and Tabb, had testified to at the trial. And the fourth part of the affidavit merely tells of the affiant's visit to the plaintiff after the first trial when he told plaintiff what he knew of the case and declared his willingness to testify as to what he had stated to the plaintiff in that interview, all of which was immaterial and afforded no ground whatever upon which to rest the motion for a new trial because of after-discovered evidence.

The other affidavit offered in support of the motion to set aside the judgment and verdict at the first trial is that of counsel for the plaintiff, in the usual form, and to the effect that counsel knew nothing of what Nathaniel Woody would testify to until after the first trial, etc., and serves only to needlessly acquit counsel of neglect of duty to exercise diligence in preparing his client's case for trial.

Our own authorities for the rule with respect to motions for a new trial on the ground of newly discovered evidence are cited in the recent case of *Taliaferro* v. *Shepherd*, 107 Va. 56, 1 Va. App. 293, 57 S. E. 385, and need not be again cited here.

We are of opinion that the circuit court erred in setting aside

the first verdict as being contrary to the law and the evidence, and that judgment, as well as the judgment for the plaintiff at the second trial, must be reversed and a judgment entered for the defendant city, in accordance with the verdict of the jury at the first trial.

*Reversed.*