LEE PRATT, ADMINISTRATOR, APPELLEE, v. WESTERN BRIDGE & CONSTRUCTION COMPANY, APPELLANT.

FILED JULY 5, 1929. No. 26884.

*Dressler & Neely* and *H. J. Lutz*, for appellant.

*G. F. Harrington, M. F. Harrington* and *Helm & Lewis,* contra.

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and CHASE and REDICK, District Judges.

CHASE, District Judge.

This is an action by Lee Pratt, administrator, against the Western Bridge & Construction Company to recover

damages for the wrongful death of Rodney J. Pratt, a minor son of plaintiff, alleged to have been caused by the negligent acts of the defendant. The action is brought by the administrator for the benefit of himself as father, and Cora Pratt as mother, of the deceased child. This is the second appearance of this case in this court. See 116 Neb. 553.

The facts as disclosed by the record are about as follows: That the defendant was under contract with the board of public works of the state of Nebraska, and Sheridan county, to install culverts on a public highway passing through Sheridan county; that it commenced the installation of such culverts in the latter part of the summer of 1922; that the defendant undertook to install a culvert just west of the incorporated limits of the village of Gordon, Nebraska; that it placed across the graded portion of said highway a metal tube and excavated at each end of said tube for the purpose of putting in cement bulkheads, but for some reason the work stopped before the bulkheads were erected and the excavations at either end of the culvert were left unfilled; that sometime after nightfall on February 8, 1923, the plaintiff, together with his wife and their three and one-half years' old son were riding toward the village of Gordon in a Ford automobile driven by plaintiff; that as the plaintiff approached the culvert in question he discovered some 300 feet ahead of him a woman walking along the highway in the same direction the plaintiff was going; that when he first discovered the woman he sounded the horn, but she heeded not the warning; that when he got within 30 feet of the woman he sounded his horn again. At the sound of the second blast of the horn the woman became startled and suddenly stepped to the left of where she was walking, toward the center of the road. The plaintiff testifies that, in order to avoid striking her, he turned the car abruptly to the left; that he drove to the left side of the road to pass her; that while on such side of the road, and before he could turn back to the proper side, the left wheel of his automobile struck the excavation at

the north end of the culvert in question, causing such a violent lurch of the automobile as to throw Rodney J. Pratt, his three and one-half years' old son, out of the automobile, causing an injury which produced his death. Plaintiff relies for his recovery upon the fact that the defendant negligently left this culvert in a dangerous condition with an unguarded excavation at the end and no barriers or guard rails were erected to warn the traveling public of the presence of this condition. The case was tried, submitted to a jury, and the jury found for the plaintiff, whereupon the trial court entered judgment on the verdict. To reverse that judgment the defendant appeals to this court.

The defendant relies for reversal of the case upon ten separate assignments of error. We shall discuss only such alleged errors as, in our judgment, appear to be essential in the determination of the issues involved.

One of the principal assignments of error is based upon the refusal of the trial court to give instruction No. 8½ proffered by the defendant. In the decision of this case the disposition of that question, we think, will be sufficient to dispose of the entire case. The tendered instruction is as follows:

"You are instructed that if you find from the evidence that the defendant constructed a guard or a barricade at the north side of the culvert in question at the time it discontinued work for the winter, and that such guard was reasonably adequate to protect any excavation which existed at the north end of the culvert for ordinary and usual purposes of public travel, and that such guard so constructed was destroyed only a few days before the accident by a herd of cattle which was driven over said culvert, crowding against said barrier and breaking it down, and that the defendant was not notified of such occurrence prior to the happening of the accident, then in such case defendant would not be liable for the absence of said barrier, so destroyed, unless and until defendant had been notified in some manner that said barrier had been destroyed so as to give defendant an opportunity to restore

the same. If you believe, therefore, from the evidence, that said barrier was destroyed only a few days before the accident, there being no evidence before you that the defendant was in any manner notified of such destruction of the barrier, your verdict will be for the defendant."

In order to dispose of this question it will be necessary to refer to the evidence upon that branch of the case. The record discloses that the defendant left the culvert in question sometime in the fall of 1922; that at the time barriers were placed up at either end of this particular culvert. These barriers consisted of 2 by 4 uprights set in the ground, one on either side of the hole, about fourteen feet apart, with a 2 by 4 nailed on top of the uprights and a board nailed to each 2 by 4 at one end with the other resting upon the ground. The testimony is somewhat conflicting as to whether or not these barriers had been continually up from the time they were originally placed there by the defendant, but most of the disinterested witnesses agree that the barrier on the north end of the culvert was up the day of the accident, but the next morning the west portion of the same was broken off and the entire barrier was broken down and scattered about. The witness Mielke, who had been a mail carrier about the time of the accident, testifies to traveling this road daily. He testified that the barriers at both ends of the culvert had been up, but the one at the north end was down some three or four days prior to the accident. Upon cross-examination, when asked how he knew this one was down three or four days before the accident, he stated that he saw a herd of cattle knock it down three or four days before the accident. The witnesses, other than the plaintiff and his wife, testified that they inspected the tracks of the automobile which struck the hole, and that these tracks started to angle to the left straight toward the north side of the grade, some distance back from the culvert, and led in a straight line, but at an angle into the excavation. The defendant's contention is that according to the testimony of the plaintiff's own witnesses this barrier was up until three or four days before

the accident, and that it was knocked down by a herd of cattle driven along the highway by some third person; that the defendant could not be held responsible for the accident in question unless it were notified of the destruction of the barrier so that it would have an opportunity to replace it, and tenders an instruction to the court presenting that principle of law to the jury. It seems to be a well-established doctrine of the law in cases where negligence is relied upon for recovery that the person who leaves a highway in a dangerous condition must erect a sufficient barrier; but, after the erection of the same, such person is only bound to exercise ordinary or common care and diligence in maintaining it.

In 13 R. C. L. 441, sec. 361, we find the following doctrine announced:

"If a sufficient barrier is erected, the municipality is only bound to use ordinary or common care and diligence in maintaining it, and if it is afterward removed or thrown down by a stranger, or from any cause, without the knowledge or fault of the city authorities, and they have no actual notice that it is so removed or thrown down, and a sufficient time has not elapsed, under the circumstances, to raise a presumption that they had notice thereof before the accident, the city is not liable."

In *Weirs v. Jones County*, 80 Ia. 351, the court had a similar question under consideration. In that case the county was aware of the defective condition of a bridge and had placed signboards across the entrance at either end thereof, bearing the words "Bridge Unsafe," and had also placed wires from one railing to the other at either end of said bridge. From some cause the barriers had become torn down and the plaintiff drove upon the bridge, which collapsed with him, causing an injury. The trial court refused an instruction similar to the one tendered by the defendant in this case, but gave an instruction to the jury in which the court told the jury that it was the duty of the defendant to see that such notices and obstructions were kept and continued there in such a manner as would be

sufficient to inform a person exercising ordinary care of the unsafe condition of the bridge. In that case the giving of such an instruction was held reversible error, and the following rule was laid down:

"Where suitable notices are posted and barriers erected by a county on an unsafe county bridge, and the barriers are afterward removed without the county's knowledge or consent, the county is not liable for injuries sustained by a person attempting to cross the bridge, if it had no actual knowledge of the removal of the barriers, or could not have known it by the use of reasonable care and diligence." (45 N. W. 883.)

The court in that case cites numerous other decisions in support of that doctrine of law.

The rule seems quite well established that where a person charged with the duty of warning the traveling public of a defective or unsafe condition of a highway or bridge places or erects suitable barriers at or near the place where the dangerous condition exists, and after erection thereof such barriers, through no act of the party erecting the same, become destroyed or knocked down, the party upon whom is cast the duty of erecting such barriers will not be liable to the person injured, unless it appears that he had actual knowledge of the destruction of such barriers, or that the same had been down for a sufficient length of time that a person in the exercise of ordinary care should have discovered their destruction. At any rate, under a proper instruction the question of reasonable diligence in discovering the destruction of the barrier is a question for the jury to determine. We believe the instruction herein tendered sufficiently states the law to have entitled the same to have been submitted to the jury.

The testimony shows by the plaintiff's own witness that he saw the barrier knocked down three or four days before the accident by a herd of cattle. The defendant is a corporation whose home office is not in Sheridan county. The question of whether or not this barrier having been knocked down and remained down for three or four days previous

to the happening of the accident was sufficient length of time for the defendant, in the exercise of ordinary care, to have discovered its destruction depends upon the facts of the particular case; but the courts, so far as we have been able to ascertain, uniformly hold that such a fact or circumstance is for the jury to determine. In the case of *Thompson v. Reed*, 29 S. Dak. 85, it was held that whether or not the dangerous condition of the premises, of which defendant had no actual notice, had existed for a sufficient length of time that the defendant, in the exercise of ordinary care, should have discovered it, depends upon the particular case and is a question for the jury to determine. The same doctrine was announced in *Western Union Telegraph Co. v. Engler*, 75 Fed. 102. "What constitutes sufficient time to discover a defect or danger must depend upon the circumstances of each case." 45 C. J. 655, sec. 27.

Where the evidence shows that the barrier was destroyed three or four days before the accident and there was no evidence of any actual notice in the record of its destruction, the question of whether or not sufficient length of time had elapsed for the defendant to have discovered the dangerous condition was a matter for the jury to determine under proper instructions. It became the duty of the trial court, when requested so to do, to instruct the jury upon this very important branch of the case.

Therefore, in the light of the record as it stands, instruction No. 8½, as tendered by the defendant, sufficiently stated the law of the present case to entitle it to be given to the jury, and a refusal to so give it constituted reversible error.

For reasons herein stated, the judgment is reversed and the cause remanded.

.REVERSED.

Note—See Motor Vehicles, 42 C. J. 843 n. 5, 869 n. 73; 13 R. C. L. 441; 20 R. C. L. 604, 671.