NORMAN RATHBONE *v.* FORT PITT BRIDGE WORKS

(No. 8442)

Submitted February 10, 1937. Decided March 30, 1937.

480

*Erskine, Palmer & Curl* and *John C. Hopkins*, for plaintiff in error.

*Lloyd Arnold* and *John K. Chase*, for defendant in error.

MAXWELL, JUDGE:

This is an action for damages for personal injury. The plaintiff, Norman Rathbone, an infant, brought suit by his next friend, Thomas J. Rathbone. The defendant is Fort Pitt Bridge Works, a corporation. There was verdict against the defendant for $12,000.00. To a judgment on the verdict, the defendant prosecutes this writ of error.

About nine o'clock P. M., Saturday, August 4, 1934, Thomas J. Rathbone, his wife and their son, the plaintiff, Norman Rathbone, then of the age nine and one-half years, were driving from the City of Moundsville in an automobile southward on State Route No. 2. Below the built-up portion of the city and at the southern boundary of the corporate limits, the plaintiff received the injury of which he complains.

At the point indicated, the defendant, under contract with the State Road Commission, was engaged in the erection of a bridge across Grave Creek. An old bridge which had stood partly on the side of the bridge under construction had been shifted from its original position so that it would not interfere with the construction work on the new bridge, its abutments, piers and approaches. Traffic was being maintained over the old bridge as relocated. The new bridge was not open for traffic. An approach to the north abutment had not been constructed.

The new bridge is placed in the straight line of the highway as it extends north and south therefrom. The old bridge, at its new location, was a few feet on the eastern side of the site of the new bridge. At a distance of about 140 feet north from the north end of the new bridge, southbound traffic was diverted to its left (east) so that it might cross the creek on the old bridge as newly located. As the Rathbones approached the north end of the new bridge just before the accident, the driver did

not swerve his car to the left so as to enter upon the old bridge, but continued straight ahead and ran into a depression, and against the abutment of the new bridge; just as the car was about to drop into the depression the driver turned it sharply to the right so that the left side of the car received the force of the impact. From the violence of the blow of the car against the abutment the boy, asleep at the moment, suffered bruises and lacerations, the most serious whereof pertain to his left eye. According to medical testimony, the plaintiff's left eye does not properly function with the right. His binocular vision is impaired.

The factual controversy centers around the query whether the defendant constructed and maintained an adequate barrier to deflect southbound traffic away from the new bridge and onto the old one.

On behalf of the plaintiff, there is cogent evidence that at the time the car in which he was riding ran into the abutment and was wrecked, there was no barrier to impede its movement as it approached the new bridge on the line of the north and south axis thereof; that after the accident the front end of the car showed no scars from having come in contact with any hard substance, and that no broken pieces of boards were found on the ground from which the conclusion could be deduced that the car had smashed through a barrier, as contended by the defendant. For the defendant, there is substantial testimony that at the time of the accident there was an adequate barrier in place and that the car was wrecked by reason of its having been driven heedlessly through the barrier; that boards broken by that conduct were found lying on the ground following the accident. This sharp controversy of fact respecting the presence or absence of an adequate barrier when the car was driven against the bridge abutment presents, of course, a typical jury question. But, though the verdict of the jury must be taken as resolving that point in favor of the plaintiff's contention, a solution of the entire problem in favor of the plaintiff does not necessarily attend.

Defendant's testimony that it erected an adequate bar-

rier the day preceding the accident is not controverted. Also, there is evidence for the defendant that the barrier which had thus been erected was intact and in place the evening of the accident, and that suitable lights had been placed thereon for the night. The defendant urges that it thus discharged its full duty respecting a barrier. Its primary position is that the barrier, properly lighted, was knocked down by the Rathbone car. As a secondary proposition, however, it contends that, if, without its knowledge, and without the elapsing of sufficient time for the defendant to receive information thereof, the barrier was torn away or destroyed by a wrongdoer immediately prior to the time the Rathbone car came along, the defendant is not liable for the plaintiff's injury because it (defendant) was in no manner negligent.

In an effort to have this theory presented to the jury, the defendant tendered to the court instructions Nos. 16 and 17. The court refused to give to the jury No. 17, and modified and gave No. 16. However, the modification of No. 16 was such as to fix liability on the defendant if the barrier was not in place at the time of the accident. The alteration involved an unwarranted restriction. So, the defendant was unable to have this theory of defense presented to the jury.

We are of opinion that this refusal of the trial court beyond doubt involved error prejudicial to the defendant. Clearly, if the defendant erected an adequate barrier August 3, 1934, maintained it properly up to a short time prior to the accident, which maintenance included the placing of sufficient lights thereon for the evening and night of August 4th, and, then, without the knowledge of the defendant and without its having opportunity to acquire such knowledge, an independent agency interfered with the barrier, before the Rathbone car approached, the defendant was not derelict and should not be held in damages for a mishap for which it was not responsible. The circumstances were such that interference might readily have taken place though there was no direct evidence thereof. It was for the jury to determine, under proper instruction, whether an inference of such

interference arose from the facts and circumstances proven. The principle here discussed is well settled.

"The rule seems quite well established that where a person charged with the duty of warning the traveling public of a defective or unsafe condition of a highway or bridge places or erects suitable barriers at or near the place where the dangerous condition exists, and after the erection thereof such barriers, through no act of the party erecting the same, become destroyed or knocked down, the party upon whom is cast the duty of erecting such barriers will not be liable to the person injured, unless it appears that he had actual knowledge of the destruction of such barriers, or that the same had been down for a sufficient length of time that a person in the exercise of ordinary care should have discovered their destruction. At any rate, under a proper instruction the question of reasonable diligence in discovering the destruction of the barrier is a question for the jury to determine." *Pratt* v. *Western Bridge and Construction Company,* 118 Neb. 736, 226 N. W. 324, 326. In point: *City of Richmond* v. *Poore,* 109 Va. 313, 63 S. E. 1014; *Raymond* v. *Keseberg,* 91 Wis. 191, 64 N. W. 861; *Weirs* v. *Jones County,* 80 Iowa 351, 45 N. W. 883; *Mullen* v. *Rutland,* 55 Vt. 77; *Klatt* v. *City of Milwaukee,* 53 Wis. 196, 10 N. W. 162, 40 Am. Rep. 759; 5 Blashfield Cyc. Automobile Law, section 3261; 13 Ruling Case Law, p. 442; 2 Elliott on Roads and Streets (4th Ed.), section 1152.

The refusal of the trial court to instruct the jury on this point, on request of the defendant, constitutes reversible error.

Many other points of error were assigned by the defendant. Discussion of them separately would protract this opinion to extreme length and would serve no useful purpose. Upon careful consideration of these additional assignments, the court is of opinion that no one of them is well taken.

For the reason stated we reverse the judgment, set aside the verdict and remand the case to the trial court.

*Reversed; remanded.*