AUDRA CLINE, *An Infant, etc. v.* J. C. EVANS *and* C. C. TALLMAN *etc.*

(No. 9553)

Submitted September 2, 1944. Decided October 17, 1944.

114.

*McGinnis, Mann & Thornhill, W. A. Thornhill, Jr.,* and *Fletcher W. Mann,* for plaintiffs in error.

*Bailey & Shannon,* for defendant in error.

Fox, Judge:

Audra Cline, an infant, who sues by her next friend, instituted her action in the Circuit Court of Wyoming County against J. C. Evans and C. C. Tallman, partners

doing business as Pineville Gas Company, seeking to recover damages for injuries to her right leg immediately above the ankle when she stepped into an open tile originally placed in a public highway in the Town of Pineville by the defendants, to cover a valve connected with their gas lines laid therein. The case was tried, resulting in a jury verdict in favor of the plaintiff for seven thousand five hundred dollars, on which, after overruling a motion to set it aside, the trial court entered judgment, to which judgment the defendants below prosecute this writ of error.

The defendants operate a natural gas distributing system in Pineville, under a franchise granted them therefor in 1940. The declaration alleges this fact, and avers that the gas line was laid under the surface of the streets, roads and alleys of said town from fifteen to twenty-four inches, and that it was necessary to provide valves so that gas could be piped from the main lines to the premises of individuals, firms and corporations; and that such valves were inclosed in a short piece of sewer pipe about six inches in diameter, the top of which was flush with the ground around it. The declaration then avers that "it became and was the duty of the defendants in the installation of said pipes and other equipment for the transportation of gas into said town and for supplying the same to its customers, to so construct and maintain said gas pipes and other equipment, laid upon and along the ground, as well as that part buried within the ground, to so construct, maintain, lay and bury it in a prudent and careful manner and to insert the short sewer pipe leading from the surface to the buried valves, hereinbefore described, in a prudent and careful manner, so as to not leave any opening into which pedestrians might step or fall, thereby causing physical injury to such pedestrians; or, if said pipes are left open, to enclose same with barriers, or place signs or something to indicate the danger to pedestrians." The declaration then avers the breach of this duty in the following language: "But the said defendants, wholly dis-

regarding their duty in this respect, wrongfully, negligently, carelessly, recklessly, and unlawfully did sink a small sewer pipe, six inches in diameter, a length or depth of twenty inches, leading to a valve at the connection of the gas pipe leading from the main pipe into the premises and on the premises of the Logan Planing Mill Company, which said Planing Mill Company has its local plant upon one-fourth acre of land lying between the track of the Virginian Railway Company, on the south, and the public highway on the north, and immediately opposite the Pineville High School Building, and, after sinking or installing said pipe leading to said valve, which pipe was flush with the surrounding ground, which was covered with cinders, there being no excavated dirt at or near said sunken pipe, to indicate its presence, which said pipe was left unfilled and uncovered, without barriers around it or any sign or other warning of its existence." The declaration further avers that on June 3, 1941, plaintiff stepped into this open sewer pipe from which she suffered the injuries complained of.

It will be observed that while the declaration may be fairly construed to allege the duty of the defendants to maintain in a safe condition their gas distributing system in the Town of Pineville, the breach alleged is not that it failed to maintain such line in a safe condition, but that when the pipe was installed it was left unfilled and uncovered, and without any barriers around it, or any sign or warning of its existence.

The evidence fails to sustain this allegation of breach. The uncontroverted evidence is that the particular sewer pipe, out of which plaintiff's injuries arose, was installed in a public highway running in front of the property of Logan Planing Mill Company, probably in April, 1941; but that the pipe, six inches in diameter, was covered by placing over it a flat stone from fourteen to sixteen inches square, and that the ground was tamped around it, and the situation made safe for pedestrians who might travel that portion of the highway. It further appears, that some

time afterwards, in the same month, the Logan Planing Mill Company, desiring to connect with the main gas line from this particular valve, employed a plumbing company to perform the mechanical work, and that the sewer pipe was removed and the connection made, and the sewer pipe was replaced and again covered in the same manner in which it had been originally placed. As stated above, this was in April, 1941. The plaintiff was injured on June 3, 1941, so a considerable time elapsed. There is, therefore, no evidence whatever sustaining the allegation of the declaration that the sewer pipe was left uncovered when first installed by the defendants; and none that it was left uncovered when the Planing Mill Company made its connection at the valve. For this reason alone, instructions Nos. 1 and 2, offered by defendants, should have been given, as the plaintiff clearly failed to make out any case upon the allegations of her declaration, and the law is that a verdict, even if there is proof to justify it, cannot be sustained upon grounds not alleged in the declaration.

But the declaration, in effect, alleges a duty on the part of the defendants to maintain their distributing system in a safe condition, and undoubtedly the duty to take proper care in that respect rested upon the defendants. The mere fact that they may have covered the sewer pipe in question, and left it in a safe condition, did not relieve them of the duty to take proper care to maintain the same in that condition. However, the defendants cannot be held responsible for the acts of third parties in connection therewith, making the situation unsafe, until it is shown either that they had notice of that condition, or a sufficient time had elapsed when it could be said that they should, in the exercise of ordinary care, have known that their distributing system was in an unsafe condition. We think the law on this point is rather clearly stated in one of our decisions. In *Rathbone* v. *Fort Pitt Bridge Works,* 118 W. Va. 479, 191 S. E. 578, we held: "The rule seems quite well established that where a person charged with the duty of warning the travelling public of a defective or unsafe condition

of a highway or bridge places or erects suitable barriers at or near the place where the dangerous condition exists, and after the erection thereof such barriers, through no act of the party erecting the same, become destroyed or knocked down, the party upon whom is cast the duty of erecting such barriers will not be liable to the person injured, unless it appears that he had actual knowledge of the destruction of such barriers, or that the same had been down for a sufficient length of time that a person in the exercise of ordinary care should have discovered their destruction." That was a case where a barrier had been erected on a highway, and there was evidence tending to show that some party, other than the person whose duty it was to maintain the barrier, had removed the same, and by this removal plaintiff in that case sustained injuries. We can see no sound distinction between that case and the present case. Here it was the duty of the defendants to keep the sewer pipe in question covered, and their own failure in that respect would render them liable to persons injured through such failure; but if a third party removed the covering, then defendants are not liable for injury resulting therefrom, unless it be shown that they had notice of the fact that the cover had been removed, or that the same had been uncovered for a sufficient length of time so that defendants, in the exercise of ordinary care, should have discovered that fact. To the same effect is a statement of the general law contained in an annotation found in 62 A. L. R. 500, following *Schrader* v. *Power Co.,* in which a defendant was held liable for permitting a hole in a highway to remain uncovered and unguarded. See also *Bradon* v. *City of Pittsburgh,* 143 Pa. Super. 427, 18 Atl. (2d) 99. The authorities last cited properly take into consideration the duty of the owner of an existing plant to exercise ordinary care to correct an unsafe situation brought about by a third party, as is indicated by our holding in the *Rathbone* case. Of course, it is self-evident that the covering on the sewer pipe in question herein had been removed at some time, but there is nothing in the

evidence indicating when it was removed. It may have been removed two hours before the accident, or one day, or thirty days, or even longer; but without some evidence as to the time when the pipe was uncovered, there can be no finding of negligence against the defendants, based upon either notice to them of that fact, or their failure to exercise ordinary care to keep their system in safe condition. Obviously, if the covering had been removed immediately before the accident by a third party, and defendant did not have notice thereof, there could be no recovery; and just as clearly if the covering had been removed at a time when, in the exercise of ordinary care, defendant should have known thereof, and should have corrected the situation, recovery could be had. But in any event, the declaration should have alleged facts upon which such recovery could be had.

Inasmuch as there will have to be a retrial of this case, it seems advisable to advert to the question raised with respect to the admission in evidence of the records of the Logan General Hospital. While not meaning to minimize the plaintiff's injuries, or to express any view as to the extent thereof, it seems clear that the verdict of the jury was based upon the assumption of the probable existence of a tuberculous infection occasioned by the injury sustained. The only basis for this assumption on the part of the jury, if they did so assume, is the record of the Logan General Hospital which shows that a laboratory test indicated that the bone of the plaintiff's leg had become infected, and that it was "probably tuberculous"; and at another point under the heading "Working Diagnosis", is a notation "Tuberculosis right tibia". This hospital report was made the basis of a hypothetical question propounded to Dr. Wilkinson, and, on his assumption that a tubercular condition existed, he stated, in effect, that it could have been and probably was excited by the injury sustained by the plaintiff in stepping into defendant's sewer pipe. The importance of the admission of this hospital record is clearly apparent.

It seems unnecessary to determine to what extent, and in what circumstances a hospital record may be introduced in evidence. If properly identified, and shown to have been made up in the regular course of treatment, it may be plausibly argued that by analogy to rules governing the keeping of books and records, the same may, when properly identified and within proper limits, be admissible as to routine matters, although there is little authority to support such a rule. But here the records were not even identified, and there is no showing whatever as to who kept or supervised them. This alone is fatal to their admission. Then, we think, a record which merely assumes to state the opinion of a surgeon or pathologist is not admissible as tending to show any fact. If there was a tuberculous infection, as indicated by this record, the person who made the test should have been called upon to testify. The defendants had the right to test that theory by cross-examination or otherwise, and, of course, they had no opportunity to cross-examine. If the hospital records were inadmissible to show the fact of tuberculous infection, as we think they were, and if the assumed opinion of the pathologist was at best hearsay, as we think it was, then the hospital records furnished no basis for their use in propounding the hypothetical question to Dr. Wilkinson, and that question was improper. "A hypothetical question which assumes facts unsupported by the evidence should not be submitted to an expert witness." *Blair* v. *Clark Coal & Coke Co.*, 107 W. Va. 507, 148 S. E. 849; *Williams* v. *State Compensation Commissioner*, 127 W. Va. 78, (decided October 3, 1944).

Counsel for defendants in error say that there was no proper objection to the introduction of the hospital records. What actually happened, according to the record, is that counsel for plaintiff indicated that he desired to file the hospital records, with the understanding that they could be withdrawn upon leaving a copy, to which suggestion the defendants' counsel stated, "We would like to interpose an objection until we have had an opportunity

to examine them." The record then goes on to state: "The records referred to were thereupon filed, marked as: 'Plaintiff's Exhibit No. 1'; copies thereof were later made by the reporter, and the originals were withdrawn. The said records are here inserted as a part of this transcript, and are in the following words and figures, to-wit:". The hospital records then follow. Treating the records as having been introduced in evidence, which is probably the effect of their being filed, we think the defendants' objection, the same being neither withdrawn nor amplified, was a sufficient objection, and being preserved by the bills of exception which incorporated all the evidence, may be considered by this Court. There was no exception to the action of the court in allowing the hospital records to be filed, but under Code, 56-6-35, no formal exception was necessary.

We think it unnecessary to discuss points raised on the instructions. Of course, in our view of the case, the peremptory instructions offered by the defendants should have been given; but on retrial a different situation may arise, and on such retrial it seems probable that the plaintiff's case will have to be prosecuted on a theory somewhat different from that followed in the trial from which this writ arises. While, of course, the plaintiff was under obligation not to heedlessly and recklessly enter a place of danger, clearly apparent to her, the streets and highways of the State are available for public use, and we indicated in *Taylor* v. *City of Huntington,* 126 W. Va. 732, 30 S. E. 2d 14, the rule which should control in cases of that character. These observations apply to instructions Nos. 5 and 13 offered by the defendants and refused by the Court.

The judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*

KENNA, JUDGE, concurring:

Of the eight assignments of error set forth in the petition of the defendants below, the reversal of this Court is based upon the second, which is to the effect that there is no evidence to sustain the only cause of action alleged in the plaintiff's declaration. The first assignment of error is based upon the overruling of the demurrer to the declaration, the third on the admission of improper evidence, the fourth on the action of the trial court in permitting the plaintiff to introduce further evidence in chief after having rested, the fifth on overruling the defendant's motion for a mistrial based on what it contends was a pretended hysteria on the part of the plaintiff, the sixth, upon the refusal of the court to give defendants' instructions Nos. 1, 2, 5 and 13, the seventh, upon the excessiveness of the verdict, and the eighth, in refusing to set aside the verdict.

Considering the fact that the declaration is in but one count, the matter before this Court is simplified by first discussing, separate from the other questions involved, the demurrer to the declaration.

The declaration alleges quite plainly that the defendants negligently installed what was evidently a circular piece of tile, twelve inches in diameter and approximately twenty inches deep, as a guard of the valve connections of its customer's service lines with what seems to have been the Pineville trunkline. The evidence shows without conflict that proper care was exercised upon the original installation of the guard under consideration and also at the time it was removed and replaced. Consequently there could be no recovery for negligence in installation.

The declaration also alleges that the defendants' duty was to maintain their equipment, including these guards, "so as to not leave any opening into which pedestrians might step or fall, * * *". I think undoubtedly it is the duty of a utility whose business consists in part of the general delivery of inflammable gas to be used as fuel, to exercise a high degree of care in doing so. Nevertheless,

I agree with the majority that no omission of that degree of care appears from the evidence. The pipe in question is shown to have been carefully installed, with its open end flush with the surface after having been covered with a large piece of stone, the stone having been leveled with the ground with tamped cinders. There is no proof showing that this covering was removed or the pipe uncovered save at the time of plaintiff's injury. There is no showing that the defendants, prior to the injury, had either actual or constructive notice that the top of the pipe was uncovered and dangerous to pedestrians. True, the covering or lid was not fastened, but there is no allegation that it was a covering of an unsafe kind and dangerous to pedestrians. There is no showing that the defendants failed to have their appliances of this nature periodically inspected to guard against wear and tear and accidental breakdown. Of course the duty devolved upon the defendants to exercise a high degree of care to maintain their equipment in a safe condition the discharge of which would require the periodic inspection usually regarded as necessary by persons using the same or similar material, and if this failure to inspect resulted in plaintiff's injury by reason of a patent defect, a right of action would result. Of course, actual knowledge of either a patent or latent defect would have the same effect. With either constructive or actual knowledge of a dangerous defect, I think beyond doubt the failure to properly repair, resulting in injury, would give rise to a cause of action.

In my opinion the trial court did not err in declining to sustain the demurrer to plaintiff's declaration, because I do believe that its averments are sufficient to allege a cause of action based upon negligent installation. I believe that that being so, the allegations covered by the first syllabus point should be treated as surplusage and ignored. The declaration being in one count, its allegations cannot be split so as to raise separate questions on different rights of action. To my mind it is perfectly clear that the declaration does allege a breach of duty as to the installation of the tile in question, but there is no proof to sustain this

allegation. The declaration does not allege sufficiently a breach of the duty to maintain, and even conceding that that failure can be coupled with the failure to properly install in a single count, there is insufficient proof to sustain a recovery based upon failure to discharge the duty of safe maintenance, so that even conceding that that duty and its breach were also sufficiently alleged, I do not believe that allegation is sustained by proof.

I would eliminate the first syllabus point and reverse because of failure of proof as indicated.