**LEW MOON CHEUNG, Appellant,**

v.

**William P. ROGERS, as Attorney General of the United States, et al., Appellee.**

**No. 16450.**

United States Court of Appeals
Ninth Circuit.

Oct. 29, 1959.

Robert K. Grean, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., James R. Dooley, Richard A. Lavine, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Lew Moon Cheung [appellant] instituted this action against the Attorney General of the United States for a judgment declaring him to be a national of the United States.[1] Appellant claims citizenship pursuant to the provisions of Section 1993, Revised Statutes of the United States, as amended by Section 1 of the Act of May 24, 1934, 48 Stat. 797.[2]

---

[1.] Jurisdiction was based on Section 360 of the Immigration and Nationality Act, 66 Stat. 273, 8 U.S.C.A. § 1503, and the Declaratory Judgments Act, 28 U.S.C.A. § 2201.

[2.] Section 1993 provides in pertinent part:
"Sec. 1993. Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States,

After trial without a jury judgment was entered for defendant [appellee]. Timely appeal from this judgment was filed, and this Court has jurisdiction to review the final decision of the district court under Title 28 U.S.C.A. §§ 1291 and 1294(1).

On this appeal appellant specifies as errors the admission of evidence pertaining to blood grouping tests, and the alleged failure of the district court to apply the proper standard of proof.

The facts of the case are not in dispute. Appellant was born on January 28, 1936, in China. He claimed his father to be Lew Shung, who was admitted to the United States as a citizen thereof on or about January 25, 1922, and his mother to be Chew Wai Ying, who married Lew Shung on March 21, 1929, and was admitted to the United States in 1951. The citizenship of Lew Shung has not been challenged. Appellant claims to be the third of five sons, including Lew Moon Chung, born in China to Lew Shung and Chew Wai Ying.

Appellant submitted to a blood test in Hong Kong on applying for admission to the United States. His alleged brother Lew Moon Chung applied at or about the same time, and was likewise blood tested in Hong Kong. Appellant was admitted to the United States as a citizen on January 26, 1952, at Honolulu, Hawaii, and on May 23, 1952, the United States Department of Justice issued to him certificate of citizenship No. AA–24951. In the interim, and in or about February 1952 the American Consul at Hong Kong requested a blood test of Lew Shung and Chew Wai Ying in furtherance of the application for admission to the United States of appellant's alleged brother, Lew Moon Chung. The then counsel [Miss Kathleen Parker, Attorney at Law] for Lew Shung and Chew Wai Ying, in reply to such request, objected to her clients

undergoing blood tests because of the expense which would be involved, and because of the Consul's refusal to issue travel documents in other cases in which the blood test was found to be favorable. This reply letter, however, contained the following concluding paragraph:

"Under the circumstances, it would seem useless for Mr. Lew [Lew Shung] to incur this additional expense if the Consul does not regard the blood test as evidence of paternity and may still refuse to issue the travel document. However, Mr. and Mrs. Lew are quite willing to make a sacrifice and incur the additional expense if the Consul will accept a favorable result of the test as sufficient proof of paternity and will issue a travel document to his son, Lew Moon Chung, upon this additional evidence provided it is favorable."

By letter dated April 8, 1952 the American Consulate General, Hong Kong, advised Miss Parker that it was the intention of the Consulate in requesting blood tests of Mr. and Mrs. Lew to conclude the investigations in the case of Lew Moon Chung and to issue travel documentation to him promptly should the results of the blood tests be found favorable.

On or about April 29, 1952, appellant's alleged parents were given blood grouping tests at the United States Public Health Service, San Pedro, California, in connection with the application of Lew Moon Chung to enter the United States.

By letter dated May 7, 1952, addressed to the American Consulate General, Hong Kong, Miss Parker stated that immediately upon receipt of the Consulate letter of April 8, 1952, "arrangements were made with the Immigration and Naturalization Service for the blood tests which

is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen moth-er, as to the case may be, has resided in the United States previous to the birth of such child. * * * "

you requested and I have been advised by that Service that the results of the tests are being airmailed to your office."

It appears that Lew Shung and Chew Wai Ying were transported from their home to the United States Public Health Service at San Pedro, California [a distance of some 20 miles] on April 29, 1952 by an officer of the Immigration and Naturalization Service. Lew Shung and Chew Wai Ying testified that they were advised by such officer that they were required to take the blood test; that they did not submit to such blood tests voluntarily and only did so because of the advice given to them by such Immigration officer, and under the belief that they were required by law to do so.

On November 17, 1957 appellant was given a blood grouping test pursuant to order of the district court.

Evidence was received by the district court showing the result of the blood grouping test given appellant, the admissibility of which was not questioned in the district court and is not questioned on this appeal. Evidence was likewise received by the district court showing the results of the blood grouping tests given Lew Shung and Chew Wai Ying on April 29, 1952. Appellant claims error in the admission of the results of such tests.

The results of the blood grouping tests are:

| | |
|---|---|
| Alleged father: Lew Shung | blood grouping AB |
| Alleged mother: Chew Wai Ying | blood grouping B |
| Appellant: Lew Moon Cheung | blood grouping O |

On or about September 17, 1956, appellant was served with a notice by the District Director of the Immigration and Naturalization Service of his intention to cancel the certificate of citizenship of appellant on the ground that it was fraudulently obtained.

On or about December 19, 1956, the Acting District Director of the Immigration and Naturalization Service entered an order cancelling appellant's certificate of citizenship No. AA–24951. On or about March 25, 1957 this order was affirmed by the Acting Regional Commissioner, Southwest Region, Immigration and Naturalization Service. On April 18, 1957, appellant instituted this action in the district court. The district court found that, based upon the blood tests set forth above, appellant "cannot possibly be the child of his alleged father."

The two questions presented for review on this appeal are (1) Did the district court err in admitting in evidence results of the blood grouping tests given appellant's alleged parents on April 29, 1952? (2) Did the appellee rebut appellant's prima facie case by clear, unequivocal and convincing evidence? We will consider these questions in the order in which they are stated.

■■ There is no doubt that blood grouping tests were given Lew Shung and Chew Wai Ying on April 29, 1952 at the United States Public Health Service, San Pedro, California. Both parties so testified in the district court. Original records of the United States Public Health Service at San Pedro, California, purportedly relating to Lew Shung and Chew Wai Ying, were received in evidence. These records consisted of two groups of three documents each, one purportedly relating to Lew Shung and the other purportedly relating to Chew Wai Ying. Prior to their receipt in evidence Mrs. Catherine Fay Wood testified that she was the registrar of the United States Public Health Service at San Pedro, California, and had been such for more than ten years; that the two groups of documents were records of the United States Public Health Service at San Pedro, California; that one document in each group was a form regularly used in the Public Health Service at San Pedro, California, and was described by the witness as an "outpatient card"

which is made out when a person applies for examination. The pertinent printing and typing on one of these cards appears as follows:

Shung, Lew (Male) 49 W 444 S. Los Angeles St.
(Surname) (Given name) (Age) (Race) Los Angeles, Calif. IMM
 Address (Class of
 bene-
 ficiary)

Admitted 4–29–52 2:15 p. m. Form I–114, U. S. Immigration Service
 (date) (hour) Terminal Island

cc: Blood typing—C-A-B-AB, M-N and RH Report to be
 mailed to U. S.
 Immigration Service–
 4 copies.

. . . . . . . . . . . . . . . . . . . . . . . . . .
 Patient's signature

PHS-1299 (HD)
Rev. 8-49
Federal Security Agency
Public Health Service . . . . . . . . . . . . . Surgeon, U. S.
 P.H.S.

In ink handwriting on this card in the space below "patient's signature" appears the following, "Sent to lab for blood typing" then the initials "L.G." The printing and typing on the other outpatient card is the same, except the name "Ying, Chew Wai", the word "female" and "age 43" appears on such card. Written in ink on this card appears, "Pt reported for blood typing sent to lab L.G." The witness testified that she was familiar with the handwriting of Dr. Louis Gaul, and that she recognized the handwriting on each card as being that of Dr. Gaul, including the initials "L.G.";

that Dr. Gaul was a commissioned officer of the United States Public Health Service at San Pedro on April 29, 1952, and was the San Pedro outpatient clinic medical officer.

Another document in each group was stated by the witness to be a form regularly used in the Public Health Service at San Pedro, and was described by the witness as a "laboratory form" made out by the doctors and sent to the laboratory for the test required. This printed form is pink in color, and in its relevant parts appears as follows:

Patient's last name-first name-middle name Register No.
Requested by Date of Request
Check Exam. Results Check Exam. Results
Requested Requested
 Blood type
 Rh Factor
Other tests or examinations (specify)
Remarks: Date of report
 Report made by (initials)
 Standard Form 514b Promulgated
 August 1948 By Bureau of the
 Budget—Circular A–22
 Hematology

On one of these forms under "patient's name" appears the name "Shung Lew" in ink handwriting. Under the heading "requested by" appears in ink handwriting "Dr. Gaul." Under the heading "date of request" in ink handwriting appears "4–29–52." Under the heading "other tests or examinations" appears in ink handwriting "Blood typing, RH Factor." Before the words "Blood type and Rh Factor" appear ink check marks. Above "date of report" in pencil appears "4–29–52". Above "report made by" appears the letter "B" in pencil; and below "remarks" appears in pencil "see typed sheet." The witness identified all such ink handwriting on this form as the handwriting of Dr. Gaul. The witness testified that all pencil notations on the form were made by one Mr. Butler, with whose handwriting she was familiar. The witness further testified that on April 29, 1952 Mr. Butler was employed by the United States Public Health Service as the only laboratory technician at the San Pedro clinic.

The other laboratory form was the same, except the patient's name appearing thereon is "Ying, Chew Wai (female)" in ink handwriting, and under "other tests" appear the following in ink handwriting "Blood typing—O-A-AB, M-N & RH If RH—indicate whether C, D, or E." The pencil notations on this form were the same as the laboratory form bearing the name Lew Shung. The witness identified the handwriting in ink on this card to be that of Dr. Gaul, and the pencil notations to be those of Mr. Butler.

The third document in each group is entirely typewritten. One of them is in the following form:

Shung, Lew

 Blood Type "AB"

 Blood Reacts: Positive to Anti-M Sera (Rabbit)
 Negative to Anti-N " "
 Positive to Anti rh′ (Anti-C) Typing Serum
 Positive to Anti $RH_0$ (Anti-D) " "
 Negative to Anti-rh″ (Anti-E) " "

 May 1, 1952
 Daniel Rose

The other document in this group is in the following form:

Ying, Chew Wai

 Blood Type "B"

 Blood Reacts: Positive to Anti-M Sera (Rabbit)
 Positive to Anti-N " "
 Positive to Anti-rh′ (Anti-C) Typing Serum
 Positive to Anti $RH_0$ (Anti-D) " "
 Negative to Anti-rh″ (Anti-E) " "

 May 1, 1952
 Daniel Rose

---

The witness testified that the typed form was used because there was not enough space on the pink laboratory form to include the results of the test; that ribbon copies of these documents bearing the signature of Dr. Rose were sent to the district director, Immigration and Naturalization Service, by transmittal letter dated May 1, 1952, which letter was likewise received in evidence; that she was familiar with the signature of Dr. Rose, who on April 29, 1952, was the deputy medical director in charge of the San Pedro clinic; that the signature ap-

pearing on each typed form was the signature of Dr. Rose; that a carbon copy of the result of the test in each case was stapled to the proper pink laboratory form and "outpatient" form, and they were filed alphabetically in the records of the clinic.

Appellant contends that the records are not trustworthy because the signature or initial of Mr. Butler does not appear on the results of the tests, they bear no signature or fingerprints of Lew Shung and Chew Wai Ying, and that the results of the tests were not identified by Mr. Butler as relating to Lew Shung and Chew Wai Ying.

Interrogatories and cross-interrogatories directed to Mr. Butler were received in evidence. He identified photostatic copies of the "outpatient" forms and laboratory forms above described as relating to persons who were given blood grouping tests by him at the San Pedro clinic on April 29, 1952; that all penciled notations on the pink laboratory forms were written by him, including "see typed sheet". Photostatic copies of the results of the blood grouping tests set out above in haec verba but without the signature of Dr. Rose were exhibited to Mr. Butler, who testified that he prepared each such document assuming that each such document was the original attachment to the pink laboratory forms.

In view of the testimony above outlined and the admitted fact that Lew Shung and Chew Wai Ying were given blood grouping tests at the San Pedro clinic on the same day as shown on the forms, we are satisfied, as was the district judge, that Lew Shung and Chew Wai Ying were given blood grouping tests by Mr. Butler at the San Pedro clinic on April 29, 1952, and that the results of the tests as received in evidence relate to them. To reach any other conclusion we would have to assume that two other persons, bearing the same names, were blood tested at the San Pedro clinic, and

through error the results of such tests were attached to the wrong laboratory and "outpatient" forms. Rather, it will be presumed that the employees of the Public Health Service properly performed their duties. United States v. Chemical Foundation, 272 U.S. 1, pages 14 and 15, 47 S.Ct. 1, at page 6, 71 L.Ed. 131; Pasadena Research Laboratories v. United States, 9 Cir., 1948, 169 F.2d 375, at pages 381–382, certiorari denied 335 U. S. 853, 69 S.Ct. 83, 93 L.Ed. 401.

Appellant states that it was not until June, 1952, that the United States Public Health Service was authorized to blood test Chinese, and that the Immigration and Naturalization Service first promulgated instructions relating to blood tests in 1953. See United States ex rel. Lee Kum Hoy v. Shaughnessy, 237 F.2d 307, footnote at page 316, and Et Min Ng v. Brownell, 9 Cir., 258 F.2d 304, at page 308, and therefore it was not the regular course of business of the Public Health Service to take blood tests at the request of the Immigration and Naturalization Service. The fact remains, however, that the registrar testified that blood testing equipment had been available at the San Pedro clinic as early as 1949, that such clinic had been testing blood since that time on behalf of the agencies that requested such service, including the Immigration and Naturalization Service, and that records of such tests were made in the regular course of business at the time or shortly after the occurrence of the event to be recorded. In short, she testified that it was on April 29, 1952, and had been for several years prior thereto, in the regular course of business of the San Pedro clinic to take blood tests on behalf of other agencies of the government who requested such tests.

The records of the blood grouping tests were admitted in evidence by the district court under the provisions of Title 28 U.S.C. § 1732(a).[3] We hold that the action of the district court was proper.

---

**3.** Title 28, United States Code, Section 1732(a) provides:

"(a) In any court of the United States and in any court established by Act of

Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence,

Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. It appears to us that the conduct of blood grouping tests is within the "inherent nature" of the Public Health Service, and that the "probability of trustworthiness" of such tests could in no wise be affected by the particular agency who requested the taking of such tests.

■ Appellant further contends that the records of the blood testing should have been excluded by the district court because of the claim that the submission by Lew Shung and Chew Wai Ying to the tests was "involuntary". There is ample evidence in the record to support the finding of the court that Lew Shung and Chew Wai Ying submitted to such tests voluntarily in order to facilitate the entry of the brother Lew Moon Chung into the United States. The court was not bound to accept their testimony on this point. Young Ah Chor v. Dulles, 9 Cir., 270 F.2d 338, and Mar Gong v. Brownell, 9 Cir., 209 F.2d 448.

■ Appellant challenges the qualifications of Mr. Butler to perform the blood grouping tests on Lew Shung and Chew Wai Ying, and contends that the results of his tests should be given little, if any, weight. In response to interrogatories Mr. Butler testified that he was then employed as medical technician at the Public Health Service Hospital, Carville, Louisiana; that on April 29, 1952 he was employed as a medical technician at the San Pedro clinic of the Public Health Service, where he had been so employed for approximately eight months; that at that time he had had 22 years experience as a medical technician; that such experience had been obtained at the National Institute of Health and the United States Army;

that his training and experience included the conduct of blood tests; that he had been making blood tests for eight years prior to April 29, 1952, and that he had made about 5,000 agglutination tests. He stated that he was not a licensed technician. As to the manner of making the tests on April 29, 1952, he testified that "venous blood was obtained from subjects and either whole blood or a suspension was added in the proportions recommended by the manufacturers of the various typing sera used in making the requested tests. They were agitated to facilitate agglutination and results were confirmed through microscopic examination" and "typing sera were used within expiration dates." He stated that the results of the tests were not checked and that he took no steps to control the sera.

The qualifications of Butler and the procedures followed by him in making the tests must be viewed in the light of the blood typing system adopted by him, and the testimony of Dr. Michael A. Rubenstein, who was the only hematologist who appeared as a witness.

It is to be remembered that the results obtained by Mr. Butler were that Lew Shung was the blood type AB, that Chew Wai Ying was of the blood type B, and the result of the blood grouping test given appellant by Dr. Rubenstein, who stated that appellant was of the blood type O.

The qualifications of Dr. Rubenstein as a hematologist were not questioned by appellant. The record discloses that Rubenstein is, and has been for a number of years, a physician licensed to practice in the States of New York and California, specializing in hematology, in which field he has contributed many monographs

---

or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the mak-

ing of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

and taught in recognized medical institutions. The substance of his testimony on qualifications was that a hematologist was not required to conduct blood grouping tests of the A-B-O system, but that any certified and qualified hospital technician was competent to perform blood grouping tests of that system because "the technique is simple, doesn't require any special training as compared to other testing, as, for example, M and N and H groups, and also because the serum, the testing seras available for this blood group testing are more reliable and are not subject to deterioration as other blood testing sera are." With respect to the qualifications of a technician to conduct blood grouping tests of the A-B-O system, Dr. Rubenstein stated, "Usually in big hospitals where the life and welfare of patients depends upon the accuracy of testing and blood transfusion matters and so on, we rely in AB and O testing entirely on qualified technicians and we do not require a hematologist to do the test because, for the reasons as I said, they are reliable and simple and accurate tests." Appellant urges that Mr. Butler was not competent to perform the tests because he was not certified or licensed. In view of the long and extensive training and experience of Mr. Butler, as previously outlined, his lack of certification or a license is without significance and does not affect his competency.

Appellant argues that since Mr. Butler did not recheck the results obtained by him and did not control the sera used, the probative value of the results obtained is seriously impaired. This contention is without merit in view of the testimony of Dr. Rubenstein, who testified that where an AB result is obtained, there is no necessity to recheck because there is a positive result as to the presence of both A and B factors; whereas, if a negative result is obtained, such as type O, which indicates an absence of both A and B factors, rechecking is necessary, because there may be cases where A and B are very weak or the serum is not potent enough to demonstrate the presence of A and B. Where, however, positive results as to both A and B are obtained, the potency of the serum is unimportant, since if positive results are obtained where the serum is weak the proof is even stronger that a person is of type AB.

■ The finding of the district court that the results of the blood grouping tests made of appellant and Lew Shung and Chew Wai Ying are reliable finds ample support in the record, as does the implied finding that Mr. Butler was qualified and competent to perform the blood grouping tests on Lew Shung and Chew Wai Ying.

Dr. Rubenstein testified, and his is the only testimony in the record on this subject, that a person of blood group O cannot be the blood child of a couple if one of them is of blood group AB. From the results of the blood grouping tests and the testimony of Dr. Rubenstein, the district court found that appellant cannot be the child of Lew Shung.

■ The district court recognized that the appellant, having established a prima facie case of United States citizenship by proving his admission to the United States as a citizen and the issuance to him of a certificate of citizenship, that the burden was upon the government to rebut this prima facie case. The district court concluded that the government had successfully done so by the blood grouping tests, upon which the trial court made the finding that the appellant could not be the child of Lew Shung. This Circuit held in Lee Hon Lung v. Dulles, 9 Cir., 261 F.2d 719, at page 724:

"For the reasons stated, we hold that where one has, over a long period of years, acted in reliance upon a decision of a board of special inquiry admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such decision must be established by evidence which is clear, unequivocal, and convincing."

Appellant contends that the rebuttal evidence of the government failed to meet

such standard. While the district court did not specifically find that the rebuttal evidence was clear, unequivocal and convincing, it did find as a result of the rebuttal testimony that the appellant cannot be the blood child of Lew Shung. In our view it is difficult to imagine a more clear, unequivocal and convincing finding on the subject of paternity. Therefore, the appellant's contention that the district court failed to apply the required and proper standard of proof to the government's rebuttal testimony of the prima facie case established by the appellant is without merit.

Judgment affirmed.