Joseph E. **THOMAS**, Appellee,

v.

Ruth A. Martin **HOGAN**, Appellant.

No. 8533.

United States Court of Appeals
Fourth Circuit.

Reargued May 28, 1962.

Decided Sept. 12, 1962.

Albert V. Bryan and Boreman, Circuit Judges, dissented in part.

Jerrold G. Weinberg, Norfolk, Va. (Robert C. Stackhouse, and Kramer, Stackhouse & Weinberg, Norfolk, Va., on brief), for appellant.

Robert M. Furniss, Jr., Norfolk, Va. (William M. Harris, and Taylor, Gustin, Harris & Furniss, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

SOBELOFF, Chief Judge.

The principal question presented by this appeal is whether a hospital record containing an entry showing the result of a Bogen's test for intoxication is admissible as a business record under the federal shop-book rule. 28 U.S.C.A. § 1732.

In the late evening of January 24, 1959, Joseph E. Thomas, a sailor, sustained severe and permanent personal injuries when struck by an automobile as he was walking south across Bellinger Boulevard at the Naval Air Station in Norfolk, Virginia. As a result, Thomas' right leg had to be amputated, and, in the jury trial below, he was awarded damages in the sum of $40,000.00.

Bellinger Boulevard is a four-lane roadway over sixty feet wide at the point where the accident occurred. According to the plaintiff, he crossed the two west-bound lanes without incident, and when he reached the double center line of the boulevard he looked to his right (westerly) and saw the headlights of a car about 200 to 250 feet away, moving in his direction in the lane next to the center line. Thinking that he had ample time at least to cross the inside east-bound lane, he continued on. As he advanced one step into the outside lane, he looked up and saw the car about fifty feet away veering to the right and coming toward him. His testimony is: "I knew if I walked any further, that I would be right in front of the car. So I stopped. Then I figured, well, what if I take a step back, then I'll be out of the way, but I don't know if she was going to go this way or that way. I was kind of—so I just stood there, and at that moment I was hit."

Ruth A. Martin Hogan, the driver of the vehicle which struck the plaintiff, defended primarily on the ground that the plaintiff was drunk and that his negligence was the cause of the accident. She related that she was driving east on Bellinger Boulevard in the lane next to the center line at a speed of 25 to 30 miles an hour. The night was dark, but at a distance of fifty feet she saw the plaintiff standing at the double center line which divides the road. She testified: "This man stood on the double white line, and I watched him to see what he was going to do, and it appeared that he was going to stand there and wait for me to pass, and I got within less than a car length from him, and I don't know whether he tripped or fell, but he lunged out in front of the car and I swerved to the right to try to avoid him."

At the nearby Navy dispensary to which the plaintiff was taken, Dr. Schwartz, the attending physician, found that Thomas' leg had been badly fractured, and that his "speech was slurred, his pupils were bilaterally dilated and reactive and he was uncooperative." The physician also detected the odor of alcohol on the plaintiff's breath, and since the symptoms were consistent with head injury as well as with intoxication, he ordered a Bogen's test to determine the amount of alcohol in the plaintiff's blood.

The Bogen's test is a relatively simple scientific procedure, commonly performed at the Navy dispensary, which involves the absorption of alcohol from a blood sample into a chemical solution which causes it to change color. By heating the blood sample in a sealed test tube, the alcohol in it passes in a gaseous state through a connecting tube into another test tube containing a receiving solution. The discolored receiving solution is then compared visually with a series of test tubes containing discolored solutions having predetermined blood-alcohol ratios.

Following the usual procedure of the Navy dispensary, a corpsman extracted a sample of blood from the plaintiff and conducted the distillation operation in the laboratory which is on the same premises. He then brought the test tube containing the discolored receiving solution to Dr. Schwartz who made the visual comparison. The test result showed that the plaintiff had three milligrams of alcohol per cubic centimeter of blood, indicating that he was quite drunk.

At trial, the defendant called Dr. Schwartz as a witness and sought to introduce through him the result of the Bogen's test. Alternatively, she tendered the hospital record containing an entry of the test result. The plaintiff objected to both tenders, and out of the presence of the jury the District Judge heard testimony as to the nature of the test, how it was conducted and its significance.

The Judge sustained the objection to the direct testimony of Dr. Schwartz on the ground that the doctor had not seen the corpsman actually perform the test and could not state from his personal knowledge that the discolored receiving solution returned to him by the corpsman was in fact the test result of the plaintiff's blood. Since the corpsman was unavailable to supply this evidence, the Judge concluded that the defendant had "failed to establish every necessary link in the chain of identification." [1] Also, the Judge noted that Dr. Schwartz was not familiar with the names of the chemicals used in the test procedure. Finally, alluding to the shopbook rule, the Judge declared that the statute made no provision for the admission of a record of facts otherwise inadmissible, and therefore held that the hospital record entry of the Bogen's test result was likewise inadmissible.

The Judge ruled further that, while Dr. Schwartz could testify with respect to his objective observations of the plaintiff when he was brought into the dispensary, he would not be permitted to express an opinion as to whether the plaintiff was drunk. To each of these rulings the defendant duly excepted.

At the close of the evidence, the case was submitted to the jury under instructions on negligence, contributory negligence, last clear chance, sudden emergency and right of way. Upon the jury's verdict, judgment was entered for plaintiff Thomas, and defendant Hogan prosecutes her appeal.

## I

The federal shop-book statute, 28 U.S. C.A. § 1732, provides:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

The section, enacted in 1936, provides an exception to the hearsay rule and is grounded on the premise that record entries made in the usual course of a business are likely to be an accurate reflection of the various daily transactions of the business.[2] To the extent that a record describes a usual routine operation of a business, it is considered trustworthy. But outside the area of such usual business routine, no presumption of verity attaches. Palmer v. Hoff-

1. Opinion of the District Court overruling defendant's motion for new trial, Thomas v. Martin, 202 F.Supp. 540, 543 (E.D. Va.1961), citing Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F.2d 588 (1947).

2. See McCormick, Evidence 597 (1954); 5 Wigmore, Evidence §§ 522–28 (3d ed. 1940).

man, 318 U.S. 109, 111–115, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Consistently, hospital records have been held to be admissible under the statute,[3] for, as Dean McCormick explains, "The safeguards of trustworthiness * * * of the records of a modern hospital are at least as substantial as the guaranties of reliability of the records of business establishments." McCormick, Evidence 609 (1954).

On all this the parties agree. A divergence in view arises, however, as to whether a record entry of a diagnostic opinion by a doctor or the result of a scientific test which requires expertness to conduct or interpret is admissible under the shop-book rule. Entries of this type, the plaintiff insists, are not covered by the statute. Decisions which lend a measure of support to his argument have been found in the Court of Appeals for the District of Columbia,[4] the Fifth,[5] and the Sixth[6] Circuits and in some state courts.[7]

On the other hand, it is the defendant's position that records routinely made of diagnoses and scientific tests which are done in the regular course of a hospital's business, are entitled to admission under a presumption of trustworthiness. Supporting this argument, there are other cases in the District of Columbia,[8] and in the Second,[9] Third,[10]

3. See e. g., the cases collected in Powell, Hospital Records in Evidence, 21 Md. L.Rev. 22 (1961); Note, Admissibility of Hospital Records in Evidence, 54 Yale L.J. 868 (1945); Hale, Hospital Records as Evidence, 14 S.Cal.L.Rev. 99 (1941); Annot., 120 A.L.R. 1124 (1939); Annot., 75 A.L.R. 378 (1931).

4. See Polisnik v. United States, 104 U.S. App.D.C. 136, 259 F.2d 951 (1958) (recorded psychiatric diagnosis held properly excluded); Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957) (same as above); New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297 (1945) (same as above). Apparently, however, this court is willing to admit recorded opinion if it is of a type on which doctors do not usually disagree. See Washington Coca-Cola Bottling Works, Inc. v. Tawney, 98 U.S.App.D.C. 151, 233 F.2d 353 (1956). See also, Wheeler v. United States, 93 U.S.App. D.C. 159, 211 F.2d 19, 22–23 (1953).

5. See Mullican v. United States, 252 F.2d 398, 404 (5th Cir. 1958) (diagnosis of patient's mental condition held properly excluded); England v. United States, 174 F.2d 466 (5th Cir. 1949) (opinion as to sanity based on hearsay held properly excluded). Apparently, the Fifth Circuit will permit introduction of hospital records only to show what treatment the patient received, the cost of services, and the like. See Missouri Pacific R. R. Co. v. Soileau, 265 F.2d 90, 94 (5th Cir. 1959).

6. See Baltimore & Ohio R. R. v. O'Neill, 211 F.2d 190 (6th Cir. 1954) (recorded statement as to what X-ray showed held not admissible), reversed on other ground, 348 U.S. 956, 75 S.Ct. 447, 99 L.Ed. 747

(1954). Apparently in this circuit, like the Fifth, the record is admissible only to show administrative matters. See Ranger, Inc. v. Equitable Life Assurance Society of United States, 196 F.2d 968, 972 (6th Cir. 1952).

7. West v. Fidelity-Baltimore Nat. Bank, 219 Md. 258, 147 A.2d 859 (1959); Baltimore & Ohio R. R. Co. v. Zapf, 192 Md. 403, 64 A.2d 139, 6 A.L.R.2d 400 (1949); Peagler v. Atlantic Coast Line R. R. Co., 234 S.C. 140, 107 S.E.2d 15 (1959); Travis Life Ins. Co. v. Rodriguez, 326 S.W.2d 256 (Tex.Civ.App. 1959), affirmed per curiam, 160 Tex. 182, 328 S.W.2d 434 (1959); Hartman v. Harder, 322 S.W.2d 555 (Tex.Civ.App. 1959); Liljeblom v. Department of Labor and Industries, 57 Wash.2d 136, 356 P.2d 307 (1960); Keller v. Wonn, 140 W.Va. 860, 87 S.E.2d 453 (1955); Cline v. Evans, 127 W.Va. 113, 31 S.E.2d 681 (1944).

8. See Wheeler v. United States, 93 U.S. App.D.C. 159, 211 F.2d 19, 22–23 (1953) (vaginal smear made in usual course of hospital's business held admissible, despite earlier decision excluding psychiatric diagnosis. See footnote 4, supra).

9. See White v. Zutell, 263 F.2d 613 (2d Cir. 1959) (detailed report of a doctor's medical findings held admissible as a business record); Terrasi v. South Atlantic Lines, 226 F.2d 823 (2d Cir. 1955) (diagnosis of "fairly pronounced shock" held admissible); Buckminister's Estate v. Com'r, 147 F.2d 331 (2d Cir. 1944) (diagnosis of cerebral hemorrhage held admissible); Reed v. Order of United Commercial Travelers, 123 F.2d 252 (2d

Seventh,[11] Eighth,[12] and Ninth [13] Circuits, and in state courts,[14] as well as three prior decisions of this court.[15]

Primarily, the plaintiff's argument is grounded on two considerations. First, under the traditional rules of evidence, a witness must be shown to be qualified before he is permitted to give an expert opinion, and similarly, scientific tests must be qualified as reliable and properly executed before they will be received in evidence. Since direct evidence of this nature would not be admissible without laying the necessary foundation, the plaintiff argues that record entries containing information of this type should not be admitted unless the record also supplies the qualifying basis.

 While we agree with the premise,[16] the suggested conclusion does not follow. We do not agree that the entry, to be admissible, must speak, not only of the diagnosis or the result of the test,

but must also state affirmatively the qualifications of the diagnostician or of the technician and the steps taken in running the test. We read the statute as supplying a presumption that diagnoses and scientific tests are properly made by qualified personnel, if the recorded information reflects usual routine of the hospital and if it is the practice to record such data contemporaneously or within a reasonable time. For example, a recorded diagnosis that a patient had pneumonia would be admissible, but a diagnosis of a rare disease might not, since it would not be one routinely made by the hospital personnel. Likewise, a record entry of a commonly performed blood test would be admissible, while an entry of the result of a scientific test infrequently done might not. When the two statutory requirements have been met, it makes no difference whether the record reflects an expression of medical opinion or an observation of objective fact. As said by Judge Parker in Long v. United States,

Cir. 1941) (diagnosis that patient "still apparently well under the influence of alcohol" held admissible). See also, Travelers Ins. Co. v. Childs, 272 F.2d 855 (2d Cir. 1959) (expressly withholding decision on whether diagnostic opinion is admissible).

10. Bartkoski v. Pittsburgh & Lake Erie R. R. Co., 172 F.2d 1007 (3d Cir. 1949) (hospital record showing condition of patient held admissible); Norwood v. Great American Indemnity Co., 3 Cir., 146 F.2d 797 (1944) (autopsy report admissible as a business record).

11. See United States v. Ware, 247 F.2d 698 (7th Cir. 1957) (record of analysis by government chemist held admissible as a business record). See also, Brucker v. Order of United Commercial Travelers, 217 F.2d 876 (7th Cir. 1954).

12. See Glawe v. Rulon, 284 F.2d 495 (8th Cir. 1960) (medical opinion held admissible); Missouri-Kansas-Texas R. R. Co. of Texas v. Ridgway, 191 F.2d 363, 29 A.L.R.2d 984 (8th Cir. 1951) (hospital record showing extent of injuries held admissible).

13. See Lew Moon Cheung v. Rogers, 272 F.2d 354 (9th Cir. 1959) (blood test admissible as business record); Medina v. Erickson, 226 F.2d 475, 482–83 (9th Cir. 1955) (diagnosis of "bronchogenic car-

cinoma" and "metastasis of the liver" held admissible).

14. See Bailey v. Tennessee Coal, Iron and R. R. Co., 261 Ala. 526, 75 So.2d 117 (1954); Nichols v. McCoy, 38 Cal.2d 447, 240 P.2d 569 (1952); D'Amato v. Johnston, 140 Conn. 54, 97 A.2d 893 (1953); Caccamo's Case, 316 Mass. 358, 55 N.E.2d 614 (1944); Boutang v. Twin City Motor Bus Co., 248 Minn. 240, 80 N.W.2d 30 (1956); Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (1956); Weis v. Weis, 147 Ohio 416, 72 N.E.2d 245, 169 A.L.R. 668 (1947); Freedman v. Mutual Life Ins. Co., 342 Pa. 404, 21 A.2d 81, 135 A.L.R. 1249 (1941); Conlon v. John Hancock Mut. Life Ins. Co., 56 R.I. 88, 183 A. 850 (1936); Joseph v. W. H. Groves Latter Day Saints Hospital, 7 Utah 2d 39, 318 P.2d 330 (1957).

15. Kay v. United States, 255 F.2d 476 (4th Cir. 1958) (Bogen's test admissible under shop-book rule—alternative ground); Long v. United States, 59 F.2d 602 (4th Cir. 1932) (diagnostic statement of government doctor in government report held admissible as an exception to the hearsay rule; pre-Shop-Book Act case); United States v. Wescoat, 49 F.2d 193 (4th Cir. 1931) (same as above).

16. See McCormick, Evidence 377 (1954).

59 F.2d 602, 603 (4th Cir.1932): "The diagnosis is the opinion of a scientific expert who has examined [a patient], heard his statements, and observed his symptoms. It approximates a statement of fact, being in reality what the physician observes when he views [a patient] with the trained eye of an expert."

There is good reason to treat a hospital record entry as trustworthy.[17] Human life will often depend on the accuracy of the entry, and it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day tasks. To this extent at least, hospital records are deserving of a presumption of accuracy even more than other types of business entries.

Little need be said of the second consideration advanced by the plaintiff, that he would lose the right of cross-examination. Exceptions to the hearsay rule, permitting the introduction of reliable hearsay evidence, have existed almost as long as the rule itself, and they are deemed justified in the absence of cross-examination because the circumstances assure the probable verity of the evidence.[18]

■ In the present case the testimony discloses that Bogen's tests were commonly done at the Navy dispensary. Equally clear is it that the test here was done in connection with the medical treatment of the plaintiff at the hospital. This was the hospital's business, and thus the record entry, routinely made, was admissible. The "missing link" in the chain of identification of the blood sample between the corpsman's taking the blood and Dr. Schwartz's determination of the test result is supplied by the presumption of regularity which attaches under the shop-book statute. This point was expressly ruled on by the courts in Wheeler v. United States, 93 U.

S.App.D.C. 159, 211 F.2d 19, 22–23 (1953), and Lew Moon Cheung v. Rogers, 272 F.2d 354, 360 (9th Cir.1959). Cf. United States v. Ware, 247 F.2d 698 (7th Cir.1957).

■ Concededly, the plaintiff may still attack the regularity of the test procedure and the competency of the corpsman who ran the test. He may point out that Dr. Schwartz did not see the test performed and was not entirely familiar with the chemicals used in the test. But these factors, the statute declares, "go to the weight of the evidence rather than to [its] initial admissibility * * *." Kay v. United States, 255 F.2d 476, 480 (4th Cir.1958). Of course, a showing of unreliability may be so complete as to overcome the presumption of verity, and in such a case the trial judge should exclude the record. The evidence here falls far short of warranting exclusion. Indeed, there is not the slightest indication that the corpsman and Dr. Schwartz were not qualified to perform their respective tasks. We conclude that the District Court erred in excluding the record entry.

## II

■ We next consider the ruling as to Dr. Schwartz's proffered oral testimony concerning the test result. It is true that, under the traditional rules of evidence, and without the aid of the shop-book statute, oral testimony as to the result of a scientific testing procedure would not be admissible unless the procedure to which the testimony relates was shown to be reliable and to have been properly conducted.[19] Under the strict common law rule, Dr. Schwartz would be precluded from testifying as to the Bogen's test result since evidence would be lacking that the test had been properly done. However, so to hold under the facts of the present case would

17. Many courts have given the stamp of trustworthiness to hospital records. See, e. g., Medina v. Erickson, 226 F.2d 475, 482 (9th Cir. 1955); Reed v. Order of United Commercial Travelers, 123 F.2d 252 (2d Cir. 1941). And see, 6 Wigmore, Evidence § 1707 (3d ed. 1940).

18. See McCormick, Evidence 455–79 (1954).

19. See footnote 16, supra.

·indeed be anomalous—the record entry would, as we have shown in Part I, be admissible, but not the same information tendered through the doctor who interpreted the test result and made the entry. Other courts have declined to permit such inconsistency.[20] Moreover, we do not see how the plaintiff is harmed. He will be able to cross-examine the doctor about the test, whereas one of his complaints about the admission of the record is that the opportunity for cross-examination is denied him. To the extent, then, that the doctor is made available for cross-examination, the plaintiff is benefited, and he has no reason to complain.

### III

██ The plaintiff concedes that apparently all jurisdictions,[21] except Virginia,[22] permit even a lay witness to give an opinion as to whether a person was "drunk." Yet we are asked to say that a physician who examines a patient for treatment must be restricted to a bare recital of objective observations without being allowed to interpret these for the jury as truly indicative of intoxication. The contention cannot be upheld. Rule 43(a) of the Federal Rules of Civil Procedure 28 U.S.C.A. provides that:

> "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *."

This rule is applicable in diversity cases,[23] and prior to the adoption of the federal rules, even law courts of the United States had for a long time been receiving opinion testimony of this nature.[24] It was error, therefore, for the District Judge to exclude the doctor's opinion that the plaintiff was drunk, relying on the restrictive Virginia rule.

### IV

These rulings cannot be considered harmless error. Particularly is this so with regard to the exclusion of Dr. Schwartz's opinion as to whether the plaintiff was drunk when brought to the hospital. True, there was ample other evidence indicating the plaintiff's intoxication. Indeed, he admitted drinking five beers on the night of the accident and had in his pocket a partly empty whiskey bottle; but, without the doctor's opinion, the plaintiff was in a position to argue that the symptoms he exhibited on admission to the hospital were due to his injuries and that he was not drunk. The defendant would have been in a stronger position to repel this argument if she had the benefit of the examining physician's opinion that the con-

---

20. See, e. g., Wheeler v. United States, 93 U.S.App.D.C. 159, 211 F.2d 19, 22 (1953). Compare Watts v. State, 223 Md. 268, 164 A.2d 334 (1960).

21. See 20 Am.Jur., Evidence § 876; 7 Wigmore, Evidence § 1974 (3d ed. 1940).

22. Dickerson v. Town of Christiansburg, 201 Va. 342, 111 S.E.2d 292 (1959).

23. See Hambrice v. F. W. Woolworth Co., 290 F.2d 557, 559 (5th Cir. 1961); Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401 (5th Cir. 1960); Peoples Loan and Investment Co. v. Travelers Ins. Co., 151 F.2d 437, 440–441 (8th Cir. 1945); Joiner, Uniform Rules of Evidence for the Federal Courts, 20 F.R.D. 429

(1957). No contention is made that the restrictive rule of evidence applicable in Virginia courts must be applied by the federal court under the rule of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Compare Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 535–540, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

24. See Turner v. American Security & Trust Co., 213 U.S. 257, 260–262, 29 S.Ct. 420, 53 L.Ed. 788 (1909) (probate court); Connecticut Mutual Life Ins. Co. v. Lathrop, 111 U.S. 612, 4 S.Ct. 533, 28 L.Ed. 536 (1884) (law court); Ins. Co. v. Rodel, 95 U.S. 232, 24 L.Ed. 433 (1877) (law court).

dition he observed in the plaintiff was due to intoxication and not a head injury.

### V

Of the several other assignments of error, only one merits discussion.[25] The defendant argues that the plaintiff was contributorily negligent as a matter of law, even under his version of the facts, in failing to step back as the defendant's car approached him. With this we do not agree. The jury was properly instructed on the law of sudden emergency under the plaintiff's version of the facts, and it could properly conclude that the plaintiff did not act imprudently under the circumstances. The jury may have deemed it not unreasonable for the plaintiff to think that the defendant would swerve to the left and return to the inside lane, if she saw him in time. Aided by hindsight, we know that the plaintiff's choice to remain stationary was wrong, but under the exigencies of the situation, as portrayed by Thomas, we cannot say that he was negligent as a matter of law. It was a jury question, as the judge correctly held.

Reversed and remanded for new trial.

ALBERT V. BRYAN, Circuit Judge (dissenting in part).

For me the principal question tendered by this appeal is only in part the same application of the Federal Shop Book rule to hospital records as is approved in Kissinger v. Frankhouser, 4 Cir., 308 F.2d 348. The doctor responsible for the entries in the instant case was present to read the test run and for cross-examination on his conclusions. The frailty of the defendant's proof was the failure of the evidence to establish that the specimen subjected to the Bogen's test and interpreted by the doctor was in truth the blood of the plaintiff.

With the District Judge, I think there was a fatal break in tracing the chain of identification. It does not appear that when the doctor made or directed the entry he could say unequivocally it was the plaintiff's blood. Surely when neither the recorder of the entry—the doctor witness—nor anyone else vouches for the identity of the subject of the entry, the Shop Book statute does not supply the hiatus. The statute does not cause the record to say something the recorder could not say. The entry cannot rise above the knowledge of its author.

Here the evidential deficiency is an omission occurring *before or at the time* the entry was made. It is not that the doctor at the trial, due to lapse of time, could not recall it was the plaintiff's blood and therefore had to depend on the hospital record. The gap in the proof does not simply go to the weight of the evidence; it cuts off entirely its relation to the case. Hence we do not reach the effect of the entry. But if I were required to pass upon the competency of the hospital record to prove by itself the accuracy of the run, I would hold the record inadmissible for the reasons I gave when dissenting in Kissinger v. Frankhouser, supra.

I concur in the judgment of reversal because I believe the District Judge was in error in not submitting the physician's opinion of the plaintiff's condition, based on objective observations.

BOREMAN, Circuit Judge, has authorized me to state that he joins in this dissent.

25. In the opinion of the District Court, overruling the defendant's motion for new trial, Thomas v. Martin, 202 F.Supp. 540, 542–543 (E.D.Va.1961), the law of Virginia on the doctrine of last clear chance is correctly stated. Through inadvertence, the court's instruction to the jury on this issue varied somewhat from the legal principle there set forth, but we assume that this will not recur at the new trial.